## James W. Payne *against* Joseph Eden.

ASSUMPSIT by the holder of a promissory note, made and indorsed under the following circumstances.

The defendant being about to take the benefit of the " act, for giving relief in cases of insolvency,"* applied to *John H. Hurtin,* one of his creditors, to sign his petition. This he agreed to do, on receiving, for the amount of his debt, a note payable 60 days after date, leaving a blank for the date, to be inserted after the discharge was obtained. In consequence of this, *Eden* signed the note on which the present suit was brought, and *Hurtin* without annexing any affidavit of his debt, put his name, which was the very last, to the petition; though, exclusive of him, there was a sufficiency in number and value to exonerate the defendant. Four days after *Eden* had obtained his discharge, *Hurtin* filled up the blank left for the date, as if the note had been then given, and indorsed it over, in trust for one of his relations, to the plaintiff. At the period when it fell due, the defendant was applied to for

An action will not lie on a note given, with a blank for the date, on consideration of signing an insolvent's discharge, and to be filled up after his exoneration, though, subsequent to its being so filled up, the maker promise to pay it, and have a sufficiency in number and value without the payee, such note being void in its creation, and not capable of being set up by a subsequent pro-

* 1 *Rev. Laws,* 428.

E e

ALBANY,
August, 1805.

Payne
v.
Eden.

mise. A note indorsed to a third person in trust for the benefit of some relative of the indorsor's is, in an action by the indorsee, open to the same objections as if the suit had been by the indorsor.

payment, and promised he would discharge it, admitting it to be justly owing.

Upon these facts, the judge advised a verdict to be taken for the plaintiff, subject to the opinion of the court, how far the action was maintainable ; and that it should be referred to the jury to determine, on what consideration the note was given. This being acquiesced in, they found for the plaintiff, but that the note was made by the defendant, previous to his discharge under the insolvent law, and in consideration of the payee's agreeing to sign his petition, for a debt of the same amount, as that specified in the note.

The case now came before the court, on this single point, whether the action was maintainable or not ?

Boyd, for the plaintiff. Every note of hand carries within itself, *prima facie* evidence of a good consideration ; and though, as between maker and payee, this may be enquired into, yet in the hands of a third person, the investigation is, unless suspicious circumstances intervene, in general shut out. This is the common rule ; if there are any exceptions, which take the present case out of it, they must be shewn by the other side. But allowing the note to have been originally bad, the promise to pay it, made subsequent to the discharge, has rendered it good. A debt from which a party is released by a certificate, or operation of law, continues to exist in *foro conscientiæ*, and is revived by a promise to pay. The reason is, the duty remains though the remedy be gone. This principle applies, with equal force, to a security for a debt. What is there to take this out of the common case, of a blank indorsement, or a blank signature, left with a person, to be afterwards filled up ? It can never be impeached, on account of the consideration between the original parties, for it takes effect from the filling up and delivery. The present question is not within the rule of the authorities that may be adduced ; for, without the signature of *Hurtin*, there was a sufficiency, in number and value, to give *Eden* his discharge. There could, therefore, be no fraud on creditors, as *Hurtin* was the last who signed.

*Caines* and *Woods*, contra. General principles are against the action. To support it, would be to defeat the provi-

ALBANY,
August; 1805.

Payne
v.
Eden.

sions of the act, the objects of which are, equality of pay-ment, and exoneration of the debtor. Both in the present instance, would be equally contravened. The note is void, as a fraud against creditors. *Cockshot* v. *Bennett* 2 *D.* & *E.* 763. *Jackson* v. *Duchaire*, 3 *D.* & *E.* 551. *Jackson* v. *Lomas*, 4 *D.* & *E.* 763. *Shirley* v. *Martin*, *Excheq.* 14th *Nov.* 1779. *Holland* v. *Palmer*, 1 *Bos.* & *Pull.* 95. No recovery, therefore, can be had on either a bond or note, given on such a consideration. *Sumner* v. *Brady*, 1 *H. Black.* 647. To say that there has been no fraud here, because there were signatures enough without *Hurtin*, and that he did not swear to his debt, is no answer to the authorities cited.

Decisions are to be framed on the broad principles of general law, and the spirit of the act is to govern. By the 3d section, a creditor is not to receive any thing "*in ac-tion.*" This, it is true, is confined by the *words* of the act, to creditors swearing to their debts. But the case be-fore the court is within the spirit of the law, and, there-fore, to be decided by it, "*lest*," according to Lord *Coke* in *Twyne's case*, "the good provisions of the law, by a "little addition and evil intention, should be defeated." A further reason may be added; if the note was given in con-sideration of *Hurtin's* signing the petition, then, if he did not sign as the law requires, the consideration has failed; and the action cannot be maintained. Besides, the note was void for *want* of consideration, as without *Hurtin* there was number and value, and his name therefore useless. So absolutely void are securities, of this nature, that money, had and received, will lie for what has been paid on them. *Smith* v. *Bromley, Doug.* 696. *(n.)*; nay; so jealous is the law on these points, that an agreement to give additional se-curity for a composition, cannot be enforced. *Leicester* v. *Rose*, 4 *East*, 372. It is not merely as a fraud on creditors, that securities of this nature are void. They are so, from a species of duress, under which the debtor is supposed to be. *Sumner* v. *Brady*, and the other cases referred to. These principles are not the result of statute law; for to use the words of Lord *Mansfield*, "it was wrong before any provision was made by statute against it." *Smith* v. *Bromley* already cited. That the note is in the hands of

a third person, is immaterial; for when an instrument is void in its creation, it is not available in the hands of even a *bona fide* holder. *Lowe* v. *Waller*, *Doug.* 735. It is true, this decision was under the statute against usury. But the principle is the same, whether an instrument be void by statute or common law. For, when a statute adds one thing more to the list of illegal contracts, it does not make a new rule of law for that particular thing, but only refers one more case to be governed by old principles. The promise, therefore, to pay the note, could not render valid the instrument on which this suit is founded; for according to *Buller, J.* in *Cockshot* v. *Bennett*, 2 D. & E. 763. "if "the security were void, no subsequent promise can set it "up, for it must be recollected, that the promise which "is relied on, is to revive the note." A distinction, therefore, is to be taken between the debt and the security. The first was lawful in its creation, the other never had legal existence. Therefore, added *Buller*, "this is not "like the case of *Trueman* v. *Fenton.*"* This reasoning applies to the argument of signing and indorsing blank paper; that is not illegal, but the giving the note by the defendant, was against law, at the time he delivered it, and could not be made good by any *ex post facto* act. A further reason may be assigned against the *jus tertii*. It does not appear that the plaintiff gave any value; he is admitted to be a trustee for a relation of the payee. This throws an air of suspicion on the whole transaction, and lays it open to the same inquiry, as if the suit was between *Hurtin* and the defendant. *Grant* v. *Vaughan.*† *Miller* v. *Race.*‡

*Riggs* in reply. The cases cited are exceptions to the general rule, that a promissory note ought to be paid. The question is, is this such a case? On the score of fraud, every argument has been anticipated, but on the point of duress, it remains to shew the reasoning of the other side does not apply. So long as there is a deficiency in number and value, the debtor may be said to be under duress, but when the petition is subscribed by the proper number of creditors, whose debts amount to the sum required by the act, that duress must cease, and the deduction fail. There is nothing therefore, to prevent maintaining the suit. The note must be taken to have been delivered,

* *Cowp.* 544.

† 4 *Burr.* 1516.
‡ 1 *Burr.* 452.

only when it was perfected ; that was, after the bankruptcy ; and the promise to pay, made it good by relation to that time.

*Per curiam.* Delivered by THOMPSON, J. This action, I think cannot be sustained. The consideration for which the note in question was given, undoubtedly was, that the payee should become, under the insolvent act, a petitioning creditor for the maker, though for a debt *bona fide* due. Why the defendant, under the circumstances stated in the case, should be induced to give the note, is not easily discernible. He had a competent number of petitioning creditors, without *Hurtin.* But, whatever the reason might have been, the inducement for giving the note, according to the facts stated in the case, was, that *Hurtin* should become a petitioning creditor. I consider the transaction to have been founded in fraud, and against the policy of the insolvent act. Although others might not have been induced to become petitioning creditors by *Hurtin's* example, yet motives of humanity might have influenced them to it, for the purpose of extricating the defendant from his embarrassments, and which they ought, and probably would have withheld, had they supposed him liable to any of his creditors after his discharge. If this note be valid, *Hurtin* not only secured to himself a benefit not common to all the creditors, but will receive more than the amount of his demand. He receives the dividend of the insolvent's estate, which, for any thing that appears, might have been twenty shillings in the pound, and besides, recovers his whole debt against the defendant, on the note. This would be a fraud upon the other creditors ; for, if *Hurtin's* demand be extinguished by the note in question, the dividend of the insolvent's estate, among his other creditors, must be increased. I therefore view the transaction in no other point of light, than as founded in fraud, the note consequently void in its creation, and being so, the subsequent promise will avail nothing. Contracts not founded in fraud, or on immoral considerations, may be revived by subsequent promises, though before such promise, there was no legal remedy. This, however, applies only to cases where the contract is voidable, and not where it is absolutely void. In such cases, no subsequent promise can revive it. It is

ALBANY,
August, 1805.

a mere *nudum pactum*. *Hurtin's* debt was annihilated by the defendant's discharge under the insolvent act, and he was under no obligation in equity or good conscience, to pay the debt, so as to raise a consideration for the subsequent promise.

I take it for granted, from the admissions stated in the case " that the note in question was held by the plaintiff as " trustee, and for the benefit of some relation of *John H.* " *Hurtin*," that we are to consider the cause in the same point of view, as if the original parties were now before us. Under these circumstances, the opinion of the court is, that the defendant is entitled to have judgment.