## Yeomans *against* Chatterton.

IN error, from the *Ulster* court of common pleas. *Chatterton* brought an action of *assumpsit* against *Yeomans*, in the court below. The declaration was in the usual form, on a promissory note, for 50 dollars, dated the 20th of *December*, 1809, made by *Yeomans*, payable to *Chatterton* the 15th of *April* ensuing.

The defendant pleaded *non assumpsit*, with notice of special matter to be given in evidence at the trial.

---

At a meeting of the creditors of K. an insolvent, C. one of the creditors, refused to subscribe the petition for his discharge, unless he was first paid, or secured, the sum of 50 dollars, part of his demand, and B. gave his promissory note to C. for 50 dollars, who thereupon signed the petition for the balance due him from K. In an action brought by C. against B. on the note for 50 dollars, it was held that the note was absolutely void, as being against the policy, and in fraud of the insolvent act: and evidence to show that K. had paid or indemnified B. for the amount of the note was inadmissible.

---

NEWYORK, Oct. 1812.

Yeomans v. Chatterton.

* 4 Esp. Cas. 229.

The execution of the note was admitted, and the defendant pro-ved that *Chatterton*, on the 20th of *December*, 1809, took and subscribed the oath, prescribed by the insolvent act, as one of the petitioning creditors of *Jacob Ketcham*, an insolvent debtor, for 396 dollars.

*Ketcham* testified, that before the 20th of *December*, 1809, *Yeomans*, at his request, went to the city of *New-York* for the purpose of obtaining the creditors of *Ketcham* to subscribe the petition for his discharge under the insolvent act. At a meeting of the creditors of *Ketcham*, *Chatterton* absolutely refused to be-come a petitioning creditor, unless some person would give him a good note for 50 dollars, to be deducted from his demand; upon which *Yeomans* gave the note in question, for the purpose and consideration that the plaintiff should become a petitioning cre-ditor of *Ketcham*; and the plaintiff accordingly subscribed the pe-tition for the sum of 396 dollars, after deducting from his demand the sum of 50 dollars, secured by the note. *Ketcham* was present when the note was given to the plaintiff.

The plaintiff's counsel, on the cross-examination of *Ketcham*, asked him whether he had not paid the amount of the note to *Yeo-mans*, or indemnified him against it; the counsel for the defendant objected to the evidence, as the note, being void in its inception, could not be revived, or made good, by any subsequent agreement or transaction between the defendant and *Ketcham*. The court decided that the evidence was admissible, which was accordingly given; and the defendant's counsel tendered a bill of exceptions to the opinion of the court.

The jury gave a verdict for the plaintiff, for 54 dollars and 98 cents.

*H. Bleecker*, for the plaintiff in error, contended, that the note being absolutely fraudulent and void, under the insolvent act, the evidence admitted was improper. He cited *Waite* v. *Harper*, 2 *Johns. Rep.* 486. and *Bruce* v. *Lee and another*, 4 *Johns. Rep.* 410.

*Ruggles*, contra, insisted, that this case was different from those which had been cited. The note was expressed to be for value received, which imported a consideration. *Chatterton* received the note as a part payment, at a meeting of the creditors. It was no fraud against them. It is precisely as if he had said, " pay me 50 dollars of my debt, and I will subscribe for the balance." It was an

open and fair payment, without fraud or concealment. It does not appear whether three fourths of *Ketcham's* creditors, besides the plaintiff, had subscribed his petition.

*Per Curiam.* The note on which the suit below was brought, was given to *Chatterton* in payment of part of his demand against *Ketcham*, and upon the evident understanding and confidence, that he should become a petitioning creditor, under the insolvent act, for the residue of his demand, as he accordingly did. The note was, consequently, void, as being given against the policy, and in fraud of the insolvent act of the 3d of *April*, 1801. By that act, the petitioning creditor makes affidavit that such a sum is due, or will become due, and that he hath not received from the insolvent, or any *other person*, any *payment of part of his demand*, in *money*, or by *sale*, &c. or any *gift*, or *reward*, upon any *contract* or *confidence*, that he should become a petitioner. Here *Chatterton* did receive payment of part of his demand, by *delivery* of a *thing in action*, *i. e.* the note, and upon the confidence that he should become a petitioner. The *demand* here, in the oath which the creditor takes, is not to be confined to the sum already mentioned in the affidavit, for that would be an absurd construction of the act. After the creditor has already said that such a sum was due, it would be idle to swear further that he has not received payment of part of it. The statute refers to his pre-existing demands, whenever, and whatever they may be. He must receive no part, in consideration of his becoming a petitioner. If he holds two notes against the debtor, he must not receive payment of one of them, in consideration of becoming a petitioner for the other. The policy of the statute is to preserve just dealing, equality, and good faith between the creditors; not that one creditor should be induced to become a petitioner for his whole demand, by the apparently benevolent example of another, who has secretly extorted nineteen twentieths of his demand, on the condition of becoming a petitioner for the remainder. This position being established, it follows, that the questions admitted by the court below to be put to the witness, were irrelevant, immaterial, and, consequently, improper. The testimony, thus admitted, tended to mislead the jury from the true point, and induced them to act upon erroneous impressions. If the note was void *ab initio*, any testimony that *Ketcham* had indemnified *Yeomans*, was useless and improper.

Judgment reversed.