WIGGIN & WIGGIN <i>against</i> BUSH.

A note executed by a debtor to a creditor, to induce him to withdraw his opposition to the debtor's obtaining his discharge under an insolvent law, is void.

THIS was an action on a promissory note made by the defendant, payable to one *David Forsaith*, sixty days after date, for 1,000 dollars, dated *May* 24th, 1812, and endorsed by *Forsaith* to the plaintiffs. The defendant pleaded the general issue, with notice of his discharge under the insolvent act, passed *April* 3d, 1811, and of other special matter.

The defendant was a partner of the house of *Rice & Bush*, who were indebted to the plaintiffs in the sum of six thousand dollars, on five promissory notes, drawn by *Rice & Bush*, payable to *David Forsaith*, and by him endorsed to the plaintiffs. *Forsaith* had conveyed lands to the plaintiffs, as security for the payment of the notes, but those lands were not sufficient for the payment of them. The plaintiffs resided at *Boston*, in *Massachusetts*.

*David Forsaith*, being at *New-York* in *April*, 1812, had some conversation with the defendant about his obtaining his discharge, in which the defendant stated that *Forsaith* might have it in his power to prevent his discharge, as he had not made a fair exhibit. On being asked what property he had omitted, he replied, that he did not know what it would amount to, until

he had it collected together. *Forsaith* attended before the *recorder*, and opposed the defendant's discharge; and the defendant, to procure *Forsaith* to withdraw his opposition, agreed to give the plaintiffs a note for 1,000 dollars, on which *Forsaith* wrote a few lines to the *recorder*, the purport of which was, to withdraw his opposition. *Forsaith* consented to endorse the note without receiving any security from the defendant. The note, although dated on the 24th of *May*, was, in fact, made on the 22d of *April*, and a memorandum of the day upon which it was executed was endorsed upon it. *Forsaith* received the note, and delivered it to the plaintiffs immediately on his return to *Boston*, before it became payable, but did not communicate the manner in which it had been obtained; and at the time of passing the same there was no understanding that he should not be liable as the endorser.

The defendant was discharged by the recorder of *New-York*, on the 1st of *May*, 1812, under the act.

*R. Sedgwick*, for the plaintiffs, contended, that this being an action by a *bona fide* endorsee against the maker, it did not lie in the mouth of the defendant to falsify the note, or to say that it was made on a day different from that on which it bears date.[*] But the day on which the note was issued was, in fact, noted on the back of it.

* *Boehm and others* v *Sterling*, 7 *Term Rep.* 423.

Then, was this note given in fraud of the insolvent law of 1811? There was no actual fraud in the transaction; nor can it be considered as against the policy of the act. *Forsaith* was not bound to oppose the defendant in obtaining his discharge. The law imposes no such duty on a creditor. He, therefore, violated no duty, by taking a note or promise to pay an honest and just debt. The *English* cases on this subject are those of positive frauds against the other creditors in signing the bankrupt's certificate, or in executing deeds of composition,[†] which are distinguishable from the present case.

† 1 *Atk.* 105; 2 *Term Rep.* 763. 4 *Term Rep.* 166. 4 *East*, 372. *Doug* 227. 696. 3 *Term Rep* 17. 1 *Hen. Bl.* 647.

In *Lewis* v. *Chase*,[‡] Lord Chancellor *Parker* refused to relieve against a bond given by a bankrupt to a creditor to induce him to withdraw a petition against the allowance of the bankrupt's certificate. In the case of *Waite* v. *Harper*,[§] the plaintiff's demand was not inserted in the inventory of debts exhibited by the defendant; it was a case, therefore, of direct fraud against the statute. In *Bruce* v. *Lee*,[||] it is not stated

‡ 1 *P. Wms.* 620.
§ 2 *Johns. Rep.* 386.
|| 2 *Johns. R.* 410.

ALBANY,
August, 1815.

WIGGIN &
WIGGIN
v.
BUSH.

that the plaintiff's name was omitted in the schedule of the insolvent, which was the fact. These cases are not, then, applicable to the present case. This is not a question of fraud, but as to the *policy* of the act. But the act itself was repealed at the next session, as impolitic, and as tending to produce frauds.

*Colden*, contra, contended, that the note was absolutely void in its creation, as being a fraud on the other creditors, and oppressive on the insolvent.[*] It cannot, therefore, be set up or enforced by a third person, although an innocent endorsee, for that would defeat the very object of the act. In *Sunner* v. *Brady*,[†] Lord *Loughborough* said the case of *Lewis* v. *Chase* had long since been exploded, and that he regarded it as a case destitute of principle, and directly contrary to the true construction of the act.

The case of *Payne* v. *Eden*,[‡] in this court, and which has since been followed by those of *Waite* v. *Harper*, *Bruce* v. *Lee*, and *Yeomans* v. *Chatterton*,[‖] was decided on the sound principles of justice and policy, and the true construction of the insolvent acts. It was there established, that a note given under such circumstances was void, as being a fraud against the other creditors; and that, being founded in fraud, no subsequent promise could revive it.

Again; the plaintiff received the note under circumstances to induce suspicion, and sufficient to put him on inquiry. He must, therefore, be presumed to know for what it was originally given. Further; the holder gave no consideration for the note, and is, therefore, in privity with the first taker.[§] *Forsaith* received no consideration. The former notes were not given up. The plaintiff must be deemed an original party to the transaction, acting by *Forsaith*, as his agent.

The objection, that a party cannot impeach paper to which he has lent the credit of his name, and put into circulation by endorsement, does not apply where it is sought to avoid the paper or security on the ground of fraud and illegality.

YATES, J., delivered the opinion of the court. The plaintiff, in this cause, was properly nonsuited.

The note in question was given to prevent the opposition of *Forsaith*, the payee, against the insolvent's obtaining the benefit of the act of the 11th of *April*, 1811, and, in my opinion, un-

[*] Cockshot v. Bennet, 2 Term Rep. 763.

[†] 1 Hen. Bl. 647.

[‡] 3 Caines' Rep. 213.

[‖] 9 Johns. Rep. 295.

[§] Collins v. Martin, 1 Bos & Pull. 648. Chitty on Bills, 63.

der circumstances of fraud; for it is expressly stated, that the defendant, in conversation with him on the subject, admitted that he had not made a fair exhibit of his debts to the recorder. It became, therefore, a subject of inquiry, whether he had committed perjury, in not rendering a just and true account, according to the oath taken by him, as prescribed by the statute under which the proceedings were conducted. Other reasons, besides, might have been shown by *Forsaith* to prevent his discharge, not susceptible of detection afterwards; so that the transaction, from its very nature, must operate fraudulently, and ought not to be countenanced. Not only true policy, but the spirit of this statute, as well as every statute I have seen on the same subject, forbids such transactions. It is at all times intended by the legislature, to effect an equal distribution of the insolvent's estate, and secure equal advantages to the creditors; and although the giving of this note, and the payment of it afterwards by the insolvent, would not, as to that amount, lessen their distributive shares in his estate; yet, the suppression of facts producing such a result, which might be the case, is alone, in my view, sufficient to prevent the recovery now sought for.

The act never can be construed, so as to authorize the insolvent to silence an opposing creditor, by a written promise of future payment of his debt, or by giving a reward to any person, whether agent for a creditor or not, to withdraw his opposition. It appears to me incorrect and unjust, and might be attended, in either case, with the grossest imposition on creditors. It must be admitted, that laws of this description, although necessary to relieve unfortunate debtors, always operate hard on creditors; and it is the province of courts of justice, in cases like the present, to interfere, and to close the remotest avenues leading to fraud or imposition on them, by persons claiming the benefit of such laws.

The case of *Cockshot and another* v. *Bennet and another*, (2 D. & E. 763.) could not have interfered with the distributive share of a creditor; yet the court decided, that the note given by the bankrupt was void. In that case, all the creditors of the insolvent consented to accept a composition for their respective demands, upon an assignment of his effects by a deed of trust, to which they all were parties; and one of them, before he executed the deed, obtained from the insolvent, a promissory

ALBANY,
August, 1815.

WIGGIN &
WIGGIN
v.
BUSH.

note for the residue of his demand, by refusing to execute the deed, until such note was made. The note was declared void in law, as a fraud on the rest of the creditors; and the court decided, that a subsequent promise to pay it, was a promise without consideration, which would not maintain an action.

In *Payne* v. *Eden*, (3 *Caines' Rep.* 213.) it was necessary for the insolvent to obtain the assent of a certain portion of his creditors; and he had a sufficient number without the payee of the note; but the note having been given in consideration of his signing the insolvent's petition, it was adjudged void.

If the security in the above cases was deemed void, the reasons against the validity of the note, in this cause, are certainly more cogent and conclusive; but it is, notwithstanding, contended, that this is a defence set up against third persons, who are subsequent holders for a valuable consideration, and without notice. This, according to the view before taken of the subject, could not give validity to the note, if void *ab initio*. It cannot, however, be made a question in the present case; because it does not satisfactorily appear, that a consideration had been given for the note by the holders; and, because, they had sufficient notice of the manner in which it was originally obtained by the payee, as their agent.

It appears that the plaintiffs still hold the former notes given by *Rice & Bush* to them, and endorsed by *Forsaith*, the payee of the note in question; who, without making any arrangement at the time it was so transferred, to deduct from that debt the amount of this note, which debt was also stated on the defendant's schedule delivered in to the recorder, and for the payment of which, the same liability exists; so that the whole demand remained in the same situation, without affording any benefit to *Forsaith*, the endorser of this note. To say the least, therefore, it is extremely questionable, whether any consideration can even be presumed to have passed to *Forsaith*, from the plaintiffs, for the note.

By the endorsement on the note of the real date, the plaintiffs had such information as ought to have led to an inquiry into the manner the payee had obtained it. The post-dating of the note which was endorsed, was an extraordinary circumstance, and must have created suspicion. The neglect of the plaintiffs to make any inquiry, ought to subject them to the consequences of the transaction between the defendant and *Forsaith*, the im-

mediate, or original parties; and, as between them, it is decidedly an illegal consideration. It is, however, manifest, from the face of the transaction, that *Forsaith*, the payee and endorser of this note, acted as the agent of the plaintiffs; they, of course, are bound by his acts, and are subject to the same consequences, as if the whole had been conducted by themselves; so that, independent of other reasoning on the subject, this alone is sufficient to prevent a recovery. The motion for a new trial must accordingly be denied.

*Motion denied.*