The facts in this case sufficiently appear in the opinion of the court, delivered by Ewing, 0. J.
This case comes before us by certiorari to the Court of Common Pleas of the county of Essex. The plaintiffs prosecuted a suit in the court for the trial of small causes, on a promissory noté given to them by the defendant. Judgment having been rendered there against them, they appealed, and on the trial of the appeal the Court of Common Pleas also rendered judgment for the defendant. From a state of the case agreed on by the parties, it appears that Teese'was indebted to the Sharps; that he applied to the Common Pleas of Essex in September,' 1823, for his discharge under the insolvent law; that-the -Sharps opposed his discharge; that Teese offered if they would' withdraw their opposition he would 'pay them down about one-half of their debt and give them his note for the balance, to be dated the next day after the discharge, payable in one .year. To this they agreed; the note now in question was given that day, dated the subsequent. Thé sum to be paid down was on that day secured to be paid. The opposition was withdrawn; the defendant was discharged; and the next day the money secured to be paid down was actually paid. The attorneys of both parties were present when the arrangement was made.
*439 In the discussion of this case at the bar two questions were proposed. 1st. What was the consideration of the note ? 2d. Was the consideration legal ?
1st. On the part of the plaintiffs it was insisted, that the antecedent debt, not the withdrawing of the opposition, was the consideration. But the converse of this proposition is most clearly the truth. The consideration of a contract, says Blackstone, is the reason which moves the contracting party to enter into it. Now the antecedent debt, or the ■existence of that debt was not the reason which induced Teese to give this note. Without other motive he would not have given it. Had no opposition been made, or when made had it not been withdrawn, this note would not have ■existed. The language and conduct of Teese are not, I owe you a debt and I will, therefore, give you a note to shew or to secure it; but, withdraw your opposition and I will, therefore, give the note. The reason which induced Teese to give, and the plaintiffs to accept the note, was beyond all doubt the withdrawing of the opposition, *which, [*354 agreeably to the provision of the insolvent law, they had interposed to his application for discharge.
2. Was such consideration legal ? The policy of our insolvent laws is that a full and fair disclosure and surrender of the property of the debtor shall be obtained; that on such disclosure and surrender he shall be, without further impediment, liberated from confinement; and that all the creditors shall bo placed on an equal footing, without preference, except, where lions exist, and shall equally partake of the property which by such disclosure and surrender is subjected to the control and disposal of the law. Any transaction or arrangement which tends to defeat either of these purposes is inconsistent with the policy of the law. The attempt to contravene the policy of a public statute is illegal. Nor is it necessary to render it so that the statute should contain an express prohibition of such attempt. It always contains an implied prohibition; and to such attempt *440 the principles of the common law are invariably and deadly hostile, not always by an interference between the parties themselves, or by enabling the one to recall from the other, where in pari delicto, what may have been obtained; but by at all times refusing the aid of the law to carry into effect or enforce any contract which may be the result of such intended contravention. The giving of the note, and the arrangement made in the present case, are, on almost every point, inconsistent with the policy of the insolvent law. First. It places one creditor, perhaps in no wise more meritorious than the rest, on much more favorable ground. One-half his debt, probably much more than the dividend of the others, was paid him in money, and this note, free, if valid, from the effect of the discharge, was given for the residue. Second. It serves to stifle enquiry and to protect frauds and concealment from successful disclosure and development. ■ The just presumption is that the debtor had reason to fear the investigation resulting from the opposition to him. Conscious of integrity he would have sought, not shrunk from, scrutiny; he would have boldly defied it, not purchased exemption at a heavy charge. Either then, fraud existed, which the giving of the note forever hid from detection, or if no fraud tainted the conduct of the debtor, and the creditor had not, as his opposition avowed, some grounds of censure, then was the note obtained by oppression, extortion and false and fraudulent pretensions, and in either event ought to be condemned. In the third place. To sustain a note or contract *355] *under such circumstances is to encourage causeless opposition; to raise up illusory barriers; and to impede the honest but unfortunatejUebtor by greater difficulties than the law ever designed. He may perhaps oftentimes be induced to bribe into silence a powerful and wealthy creditor, who by a shew of opposition has no other design than to obtain an illegal preference. In mercy to the debtor himself then, the law will protect him from such jeopardy. *441 These principles are sanctioned by a number of cases, to which it may suffice to give a general reference, without a particular review in detail. Jackson v. Duchaire, 3 T. R. 551; Cockshot v. Bennet, 2 T. R. 765; Nerot v. Wallace, 3 T. R. 17; Jackson v. Lomas, per Butter, 4 T. R. 170 ; Blackford v. Preston, per Ashurst and Lawrence, 8 T. R. 93; Smith v. Bromley, Doug. 696, note; Holland v. Palmer, Per Eyre, C. J. 1 B. and P. 95; Leicester v. Rose, 4 East 380; 1 Leonard 180; Yelv. 197; 1 Atk. 352; Cowp. 39; Callagan v. Hallet, 1 Caines 104; Payne v. Eden, 3 Caines 213; Waite v. Harper, 2 John. 386; Bruce v. Lee, 4 John 410; Yeomans v. Chatlerton, 9 John. 295; Wiggin v. Bush, 12 John. 306; Tuxbury v. Miller, 19 John. 311; Sterling v. Sinnickson, 2 South. 756. Of some of these cases, when cited on the argument at the bar, it was said they arose on the bankrupt laws in England, and the statutes in New York, whereby both the person and the debt were discharged. But these cases are worthy of respect and attention, not more for their peculiar circumstances than as illustrations of great principles of the common law, principles as powerfully applicable to a statute concerning insolvents as to a staute respecting bankrupts. For to contravene the policy of a statute, to defeat by artful contrivance the just aim of legislative wisdom, is equally to be reprehended whether the statute relates to those who are or are not traders; whether it discharges the person only, or both debt and person. To the remark, that in the English bankrupt system there is an express provision by Stab. 5 Geo. 2 ch. 30 s. 11, which makes void every security for the payment of any debt due before the party became bankrupt, given as a consideration to a creditor to sign his certificate, the observation of Lord Mansfield, in Smith v. Bromley, is a sufficient answer. ‘ ‘ The taking money for signing certificates is either an oppression on the bankrupt or his family, or a fraud on his other creditors. It was a wrong thing in itself *442 before any provision was made against it by statute.” With respect to some of the PTew York cases it was remarked, *356] *that under one act the debtor, and under another the creditors, must make oath that no preference had been given. But the prescribing of this oath is only a -method of preventing the preference which the act seeks to deny, and of securing the equality which is one of its leading objects. It has nothing to do with' the effect of such preference when given or attempted. It was further objected by the counsel of the plaintiffs, that under the PTew York insolvent laws the sanction of a certain number and value of the creditors must be obtained by making application for or assenting to the discharge, and that here any one creditor may make opposition, so that no one is here, as there, dependent on another. But in the case of Payne v. Eden, the note declared void was given to the last of the petitioning creditors, and who signed after there was a sufficiency in number and value to exonerate the debtor ; and in the cases of Waite v. Harper, Bruce v. Lee, Wiggin v. Bush and Tuxbury v. Miller, the withdrawing of the opposition merely, and not the signing of the petition, was the consideration.
The consideration of the note in question, or the reason which moved Teese to give and the plaintiffs to accept it, was in my opinion illegal; the note was void, and the judgment of the Oourt of Common Pleas was right.
It may not be improper to observe, that this opinion does not in the slightest degree, conflict with the case of Hendricks v. Mount and Crane, 2 South. 738, where the purpose of the sale of the goods was to satisfy or secure an existing debt;. where in the opinion of the court the bill of sale had been made before the petition under the insolvent act had been presented; and where certainly no opposition had been made or was withdrawn. PTor does the opinion in any measure interfere With the settled and just principle that *443 an insolvent or bankrupt may, after his discharge, and when free from restraint, make a valid promise to pay an old debt ; and that the old debt is so due in conscience, notwithstanding the discharge, as to afford a sufficient and legal consideration for the promise.
Let the judgment bo affirmed.