IN CARROL SUPERIOR COURT, 1833.

POE *vs.* Justices of the Peace.

### Certiorari.

THE cases in the Justice's Court, the subject of this *certiorari* were founded upon promissory notes in the hands of third persons before due and without notice, proven on the trial to have been given in the compromise of a *scire facias* for the condemnation of a lot of land. The grounds taken were these. 1. That the notes are void, because given in direct violation of an express statute of the State, which says that " no case (to wit, *scire facias*) after being commenced " as aforesaid by *scire facias*, shall be settled and compro- " mised by the informer, or otherwise disposed of, to the " prejudice of the State ; and in case that it is, said land shall " be liable to be returned by any other informer, in manner " above prescribed, and division made thereof accordingly." (Lot. Law, 1825.) 2. Also void against the policy of the State.

*By the Court.* There seems to be two cases in the English authorities, in which a note or bill of exchange is void, or rather in which their illegality can be inquired into, in the hands of such third persons trading for them before due and without notice, viz. those founded in *gaming and usury.* The statutes expressly declare them void in these cases. The same rule would apply to every case, where a statute should declare such contract void. 3 Kent Com. 51, 52. All contracts which have for their object any thing which is repugnant to justice, or against the general policy of the common law, or contrary to the express provisions of a statute, are *void.* So is every contract against good morals, or contrary to the laws of God, void. Com. Cont. 30, 31, 32. It is said that every contract made for, or about any matter or thing which is prohibited and made unlawful by any statute, is void, though the statute itself does not expressly declare that it shall be so, but only inflicts a penalty; because a penalty implies a prohibition. 1 Com. Cont. 36. 41. 1 Bos. & Pul. 264. Courts of justice allow such considerations when illegal, or immoral, to be inquired into ; for the allowance is not for the sake of the party who raises the objection, but is grounded upon principles of public policy.

A note given in compromise of a suit by *sci. fa.* to condemn land under the lottery law of 1825, is in violation of that statute, contrary to public policy, and void as between *maker* and *payee*; and its consideration may be inquired into in a suit between the *original parties :*

But if indorsed before due, and without notice, in a suit by such innocent indorsee against the maker, the courts will not permit the consideration to be gone into.

2 Kent Com. 366; Cowp. 343; 16 John. Rep. 486. The same relief is given in a Court of Equity against contracts immoral or illegal as at common law, even in favor of the guilty party; when the principles of public policy, or the good of others required it. 2 Kent Com. 43. 366. 3 Ves. 456. 11 Ves. 526. 13 Ves. 581. The court is clearly of opinion that the contract in this case, is against both of the provisions of the act of 1825, and the general policy of the State; and as between the *original* parties might be inquired into and voided.

But in Great Britain, where these doctrines prevail, the public interest and commercial prosperity of the kingdom require that the principles laid down in relation to promissory notes in the hands of *innocent holders without notice,* be strictly pursued; and except in the isolated cases referred to, of *gaming and usury,* will not permit the consideration to be gone into. The same doctrine holds in the United States; and in this State, so far as these principles have been discussed, is generally recognized in our courts. " The consideration of a note, not void in its creation, (that is, not so declared by statute) and indorsed before due and without notice, cannot be inquired into, in an action by a *bona fide holder* against *the maker.*" 3 Caines' Rep. 299; 9 John. Rep. 295. A case is found in 12 Johnson, 306, which seems to hold a somewhat contrary doctrine, to wit, that if void *ab initio, void* in whosesoever hands they might go, notice or not. Yet, what are we to understand by being void *ab initio,* unless we understand, where they are declared so by statute? The same phraseology used in England would be so understood, and they would fall under the same decisions referred to relative to notes declared void by the statutes of *gaming and usury.* In this case, however, of Wiggins v. Bush, 12 John. 306, Justice Yates incidentally touches the point; it was not involved in the case, because there it was admitted the party had notice. He says " this is a defence set up against third persons who are subsequent holders for a valuable consideration and without notice, it is considered, and therefore protected. This is not so, if the notes are void *ab initio,* they are void in their hands. It cannot be made a question, he says, in the present case, because it does not appear a consideration was ever given for the note, and because they had *sufficient notice* of the manner in which it was obtained by the payee, their agent."

In the second volume of Starkie's Evidence, page 282, that learned and perspicuous author says, after collating and analyzing all the English doctrine upon this subject, " That no illegality between the original parties will affect an innocent indorsee (except under the statutes of gaming and usury) *unless he had notice of the illegality, or took the bill after it became due from one who had,* and refers to Doug. 632; 1

Esp. C. 389. 45 ; 2 Esp. C. 538. ; 11 East, 43. ; 12 John. 306 ; 1 Bay. 113. Chief Justice Kenyon says, that the innocent indorsee of a promissory note, or bill of exchange can recover in all cases, with the exception of those founded in gaming, or usurious consideration, *and in no other case*, could the innocent indorsee be deprived of his remedy, and that a contrary doctrine would shake paper credit to the foundation. 4 Petersdorff Abr. 240.

But it is said, admitting all that doctrine to apply in this country, a subsequent promise was proven, in this case, by the maker to pay them, when due, to the holder, and therefore made valid. As to that principle, it is believed not to come up directly here, because the consideration cannot be gone into in the hands of an innocent and *bona fide* holder, not affected by notice, and having traded for the notes before due. But if they were void in their creation a subsequent promise cannot make them good. 3 Cain. Rep. 213.