### Case No. 4,729.

FENNER et al. v. DICKEY et al.

[1 Flip. 34;[1] 3 West. Law Month. 208.]

Circuit Court, N. D. Ohio. March Term, 1861.

Flattery & Griswold, for plaintiffs.
Pease & Bierce, for defendants.

WILLSON, District Judge. This is an action brought upon defendants' promissory note for $883.65, payable to the order of the plaintiffs, one year from date, at the Merchants' Bank of Massillon, and dated New York, December 1, 1857.

The case was heard upon demurrer to a special plea in bar.

The facts disclosed by the plea are, that the defendants, previous to the 19th of November, 1857, had been largely engaged in the mercantile business at Massillon, Ohio; had become insolvent beyond their ability to pay in full, on account of their liability for goods to the plaintiffs and other eastern merchants.

That, on the suggestion of the plaintiffs,

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

and in order to obtain relief from such embarrassment, they did, on the 19th day of November, 1857, propose to all of their creditors (including the plaintiffs), to pay them fifty percentum of said indebtedness in the manner following, viz.: To execute and deliver to each of said creditors their promissory notes, jointly with one John Whipple, their surety, for said fifty percentum, payable at six, twelve, and eighteen months; said notes to be in full payment and in discharge of the entire indebtedness of the defendants.

This proposition was accepted by each of the creditors, and a composition deed for that purpose, bearing date Nov. 19, 1857, was signed by all of them.

The notes were accordingly executed by the defendants and Whipple, and delivered to the creditors as agreed, and by them accepted.

These compromise notes were all promptly paid as they matured.

It is alleged in the plea that, after the plaintiffs had verbally assented to the compromise, and before they had signed the composition deed, they secretly, and without the knowledge or consent of the other creditors of Whipple, required and extorted (as a condition upon which they would sign the composition deed), that the defendants should, in addition to the notes secured by the surety of Whipple, give the plaintiffs their own notes without security for the remaining half of the original debt. And they aver that, being thus in the power of the plaintiffs, they did, without the knowledge of the other creditors, agree to give such notes, and thereupon the plaintiffs signed the composition deed with the other creditors.

It appears that afterwards, on the 1st day of December, 1857, the note now in suit was given to the plaintiffs in pursuance of such an agreement, without the knowledge of the other creditors, and without any other consideration than the verbal agreement made as aforesaid, as is alleged, in fraud of the general creditors.

The question of law raised by the demurrer to this plea is, Whether the note now in suit was given under such circumstances of fraud as to render it void?

It is contended by the defendants' counsel that the note was absolutely void in its creation as being a fraud upon the other creditors, and as oppressive on the defendants, who were insolvent at the time of the compromise in November, 1857.

Fraud is as difficult to define as it is easy to perceive. It is sometimes said to consist of "any kind of artifice employed by one person to deceive another." But the term is one that admits of no positive definition, and cannot be controlled in its application by fixed and rigid rules. It is to be inferred or not, according to the special circumstances of every case. Whenever it occurs, it vitiates the transaction tainted by it. No contract, although it be apparently fair and in compliance with the formalities of the law, can be enforced, if it be essentially unfair, or is founded upon a dishonest or corrupt consideration. The law has ever scrupulously guarded the integrity and good faith required in the general compromises of creditors with their debtors. It is, as well from considerations of public policy as of sound morals, that these transactions should be conducted with truth and fairness, lest any undue, secret advantage be secured to one creditor at the expense of another.

The adjudged cases upon transactions of this kind are numerous, and we suppose the law in relation to them is well settled.

In Cockshot v. Bennett, 2 Term R. 763, the action was assumpsit upon a promissory note. The circumstances of that case were, that the defendants being considerably indebted to the plaintiffs and other creditors, and being insolvent, assigned over all their effects in trust to pay 11s. in the pound to their creditors, to which they all assented and signed the deed, except the plaintiffs, who refused to sign the deed, and to take any composition, unless the defendants would give them a note for the remaining 9s. in the pound. They accordingly gave the note for that amount, on which the plaintiffs signed the deed, and the defendants made a subsequent promise to pay it.

In deciding the case, Lord Kenyon placed his opinion on the foundation that the temptation to give the note was a fraud on the creditors who were parties to the contract on which their debts were to be cancelled in consideration of receiving such consideration, and he said that "all the creditors being assembled for the purpose of arranging the defendants' affairs, they all undertook, and mutually contracted with each other, that the defendants should be discharged from their debts after the execution of the deed." As to the revival of the debt by a subsequent promise, the learned chief justice said, that "contracts not founded in immoral considerations may be revived; but this transaction is bottomed in fraud, which is a species of immorality, and not being available as such, cannot be revived by a subsequent promise."

In the same case, Mr. Justice Ashurst concurred in opinion with the chief justice, that the transaction of giving the note to the plaintiffs was a fraud on the rest of the creditors. "For," said he, "they were induced to enter into the agreement on principles of humanity in order to discharge the defendants from their incumbrances, and if they had not thought such would be the effect, they would not probably have signed the deed, but each would have endeavored to obtain payment of his whole debt. The security, therefore, is not merely voidable, but absolutely void. The note was void on the ground of fraud, and any subsequent promise must be nudum pactum."

In Jackson v. Lomas, 4 Term R. 166, a secret agreement was made by the debtor with a creditor to pay an additional sum, the consideration of which agreement was that the creditor should sign a composition deed with the other creditors.

Mr. Justice Buller declared the general principle in such case to be, that a secret agreement of this kind, made between the insolvent and some of his creditors, in order to induce the rest of creditors to agree to the composition, is absolutely void. and the court of king's bench in that case refused to enforce the secret agreement. Such, we believe, has been the uniform course of decision of the court of king's bench in England, and of the judges of that court at nisi prius. Doug. 696; 1 H. Bl. 647; 3 Term R. 551; 6 Term R. 146; 4 East, 371; 1 Esp. 131, 236; 5 Bing. 432; 3 Barn. & C. 605.

The principle established by these English cases has been adopted and strictly followed by the courts of this country.

In Payne v. Eden, 3 Caines, 213, it was held necessary for the insolvent debtor (under the New York statute) to obtain the consent of a certain portion of his creditors, and, in that case, the insolvent had a sufficient number, without the payee of the note. But the note having been given in consideration of his signing the insolvent debtor's petition, it was adjudged void.

In Wiggin v. Bush, 12 Johns. 305, it was decided that a note executed by a debtor to a creditor to induce him to withdraw his opposition to the debtor's obtaining his discharge under an insolvent law, was void.

In that case, Mr. Justice Yates declared that the policy of the law forbids such transactions; its purpose is to effect an equal distribution of the insolvent's estate, and thereby secure equal advantages to the creditors. And although the giving of the note and the payment of it afterwards would not, as to the amount, lessen their distributive share in his estate, yet the suppression of facts producing such a result was held to be alone sufficient to prevent a recovery.

The same principle was affirmed in Waite v. Harper, 2 Johns. 386; Bruce v. Lee, 4 Johns. 410; Yeomans v. Chatterton, 9 Johns. 295; Tuxbury v. Miller, 19 Johns. 311.

Such, also, is the law in Massachusetts. In Case v. Gerrish, 15 Pick. 49, the plaintiff, with the other creditors of the defendant, entered into an agreement with the defendant by which he consented to take an equal distribution of his property and give him a discharge. But at the same time he entered into a secret agreement with the debtor by which he stipulated to have a separate note for the balance of his debt.

Chief Justice Shaw, in deciding the case, says: "This was an unwarrantable coercion upon the debtor, and a fraud upon the other creditors, which rendered the note void."

In that case, although the note was given at the time of the execution of the agreement, and as an inducement to the plaintiffs to sign that instrument, it was, nevertheless, post-dated in order to give it the appearance of a subsequent and independent transaction, entered into after the defendant had obtained his discharge. It was insisted in the argument of the case before us, that, as there was no legal obligation created by the defendant's agreement of the 19th of November, 1857, to give this note, his subsequent execution and delivery of it to the plaintiff was a voluntary act, and that the unpaid portion of the original debt was a sufficient consideration for it.

The language of the special plea is, that "the defendants, in pursuance of said agreement, and for no other consideration, did execute and deliver to the plaintiffs the note aforesaid." The demurrer admits the truth of this allegation in the plea.

It does not, therefore, present the case of a thing done voluntarily without the taint of fraud. Nor is it a case of the execution of a contract which is merely voidable. We must take the fact stated in the plea as true. The note as given in pursuance of a fraudulent contract, and for no other consideration.

This is not like an agreement made by an infant, which is only voidable, for that may be revived by a promise after he comes of age. In such a case he is bound in equity to discharge the debt, though the law would not compel him to do so. But here, the plaintiffs had consented to take a smaller sum than the original claim, and they had annihilated what remained of the original debt by the discharge contained in the written agreement of 19th of November, 1857.

The whole transaction was fraudulent in its conception, and the paper obligation was fraudulent in its execution. The note, therefore, is absolutely void.

The demurrer to the special plea is overruled.