## PINNEO *a.* HIGGINS.

*New York Common Pleas ; General Term, March,* 1861.

### COMPOSITION-DEED.—FRAUD ON CREDITORS.

A creditor who unites with others in a composition-deed, enters into an obligation thereby, not only with the debtor, but with the other creditors who become parties ; and any separate agreement by which he secures to himself more advantageous terms than those enjoyed by the other parties, is a fraud upon them, and void ; and such agreement is equally void, though made after all the other creditors have signed, and whether made before or after the creditor who makes it has signed.

The plaintiff, one of several creditors, being applied to by his debtors to sign their composition-deed, put them off until other creditors should sign, and after all the others had signed, then refused to sign unless the debtors would secure the composition-note, by obtaining the indorsement thereon of the defendants, and would give their own notes for the whole residue of the debt. This the debtors did, and the plaintiff accordingly signed the composition-deed.—*Held,* that this was a fraud upon the other creditors, and that the plaintiff could not recover against the defendants upon their indorsement so obtained.

Appeal from a judgment.

This was an action against defendants, Higgins & Farrell, as indorsers of a promissory note. Madden & Stewart, the makers, having failed in business, proposed to their creditors a composition, by which the creditors were to accept the debtor's notes for sixty-two and one half cents on a dollar, and were to look to the rents of certain property for the residue of their demands. The plaintiffs were among the creditors, and when the deed was presented to Pinneo, one of the plaintiffs, Pinneo put off their signing until the other creditors should sign. All the other creditors having signed, Pinneo then refused their signature, except on condition that the debtors would obtain the indorsement of the defendants upon the composition-note, and would give their own notes for the balance, of thirty-seven and one-half cents on a dollar. The debtors procured the indorsement for the plaintiff, and gave their own note for the balance,

and Pinneo then signed on behalf of the plaintiffs, but the other creditors had no such additional security.

On these facts judgment was given for the defendants, and the plaintiffs appealed to the court at general term.

*A. H. Wallis*, for the appellants (after reviewing the conflicting evidence):—I. The composition-deed was not binding upon the plaintiff until it was performed, or performance tendered by Madden & Stewart. (Fellows *a.* Stevens, 24 *Wend.*, 294.)

II. If the paper signed by the plaintiffs is a composition-deed, they received, in the note in suit, nothing more than they were entitled to by the deed. If the plaintiffs recover in this action, they receive nothing more than they would be entitled to by the terms of the composition-deed. In all the cases on this subject, the effort has been to enforce securities that have been taken for an excess beyond the amount provided for by the composition-deed; and the authorities all say that the creditor is entitled to recover the amount that was provided by the deed to be paid to him, notwithstanding the fraudulent agreement to receive an excess. The agreement for the excess only is void. (*Edw. on Promissory Notes*, 345; Breck *a.* Cole, 4 *Sandf.*, 79; Patterson *a.* Boehen, 4 *Barb.*, 407; 7 *U. S. Annual Dig.*, 123.)

III. The agreement to take such excess is void only because, 1st, it is a fraud upon the other creditors; 2d, it reduces the fund out of which the creditors are all to be paid. (*Edw. on Promissory Notes*, 345, and cases there cited.) In this case, the plaintiffs, by all the testimony, declined to become parties to the compromise until the time they signed the paper. No other creditor, therefore, was induced to sign because they did. The note in suit was given for a part of the amount to be paid by the terms of the deed. The fund, therefore, was not reduced. The principle on which the rule is based does not apply in this action.

IV. The paper produced in evidence is not a composition-deed. It is merely an executory contract, agreeing upon certain terms and conditions to execute a composition-deed, and there is no evidence that the terms and conditions were ever performed. In all the cases relating to this subject, the deed contains a release of all prior demands against the debtor. In this case it is

only an agreement to give a release upon certain terms and conditions, which are not proved to have been performed so as to entitle the debtor to a release.

V. None of the creditors of Madden & Stewart were bound by the paper alleged to be a composition-deed. They all could recover their original demands, because the terms and conditions of the agreement were never performed. The agreement, by its terms, was not binding upon any, unless it was performed by Madden & Stewart. The profits of certain leases were to be secured to the creditors, which was never done, but on the contrary, the leases were otherwise disposed of. The notes given on the compromise were to be paid at maturity, as a condition precedent: there is no evidence that they were ever paid.

VI. The agreement with the creditors never having been performed, the creditors were each entitled to collect their original demands, or any demands they had when they signed the paper. Therefore, there was no composition between the creditors, and could have been no fraud upon them. The rule has been adopted for the protection of the creditors, not for the relief of the debtor. As to the debtor, there could be no consideration to support it, unless security beyond the liabilities of the debtor was given: the consideration is the mutual agreement between the creditors.

VII. The defendants are in no better condition than Madden & Stewart could have been, and if Madden & Stewart could not make a defence against this note or the excess of the compromise, the defendants cannot, as the notes were used for the very purpose for which they were indorsed.

VIII. There is no evidence that the other creditors did not know and approve of the arrangement with the plaintiff, and there is evidence that some of them did know and approve of it. The defendants were creditors of Madden & Stewart, and parties to the compromise agreement, and they indorsed these notes knowing the purposes for which they were to be used. If the other creditors knew of the arrangement with the plaintiffs, this agreement with the plaintiffs is not void.

IX. If the agreement was not binding upon the other creditors, then there was no composition; and if there was no composition, then the consideration for the indorsement was not illegal or void.

*Richard O'Gorman*, for the respondents (after reviewing the conflicting evidence) :—I. As to Higgins, one of the defendants, there is manifestly no cause of action. No one member of a firm can bind the firm by using its name for accommodation of others, or for any purpose not strictly within the business of the firm. It is not within the scope of the authority which the firm necessarily delegates to each member thereof. Higgins was absent, and could not have been consulted. The *onus* of proving his assent rests on plaintiffs. (Butler *a.* Stocking, 8 *N. Y.* (4 *Seld.*), 408.)

II. By the composition-deed signed by the plaintiffs, they agree with their debtors and with one another to accept the terms therein mentioned, and no other or better terms. (Hughes *a.* Alexander, 5 *Duer*, 488.) It is an agreement demanding the utmost good faith. On the strength of it, the debtors are enabled to obtain new credits and contract new debts. Trusting that it fairly exhibits the condition of the debtors, and their relations with their creditors who are parties to it, these creditors and new ones are induced to trust them again. Any creditor, signing such a document, who extorts from the debtor any larger sum than he thereby agrees to take, or any earlier payment, or any better security, not only violates his own agreement with the other creditors, but aids in the accomplishment of future frauds. In all cases of the kind, the rule that "equality is equity," especially applies. (Bell *a.* Leggett, 7 *N. Y.* (3 *Seld.*), 176.) The note, in fact, was void in its inception. (*Ib.*, 183.)

The ground taken by the plaintiffs' counsel is untenable. The object and uses of a composition-deed are various. One of these uses, and not the least important, is, that it may be exhibited to creditors as an evidence that a settlement has been effected by the debtor, and of the precise value and terms of that settlement. The effect of it on the mind of any one that sees it, is to induce him to believe that each creditor signing has got no more, and no less, and no other settlement than its terms provide for. In fact, it was intended to be put to this use in this case. If any one creditor has got any more, or any better, or any other terms, the agreement is a falsehood and a snare, and causes belief in what is not true. *An indorsement is a new note.* It is here just as if Madden & Stewart had given their own notes, and notes of Higgins & Farrell also,

whereas in their composition-deed they contract to give their
own notes alone. The fraud is manifest. Courts will not nicely
weigh the probable extent of damage to the creditors, but dis-
continuance the fraud by avoiding the transaction altogether.
It makes no matter whether a creditor signs a deed *first* or *last*.
He is no less bound by the terms of the deed. By his signature
he agrees to take the settlement therein set forth, and no other,
and if he gets any other, it is a manifest breach of his agreement.
(Payne a. Eden, 3 *Cai.*, 212.) Besides, to obtain an accommo-
dation indorsement, is to incur a liability to the indorser. The
condition of the debtor is so far altered without the knowledge
of his creditors, and new and secret relations are contracted.
The special tendency to future fraud is so evident, that courts
of equity require the strictest good faith in all transactions of
the kind. (*Edw. on Promissory Notes*, 345.) In this case the
plaintiffs received, not only security for the sixty-two and one-
half, but the debtors' new notes for the balance—a double fraud.

By the Court.—DALY, F. J.—After a careful examination
of this case, I am confirmed in the view which I took of it at
the trial. It is of no consequence whether the name of the
plaintiffs was the first that was signed to the composition agree-
ment, or the last. (Knight a. Hunt, 5 *Bing.*, 432.) By signing
it they bound them to release Madden & Stewart upon certain
conditions. The obligation was entered into, not only with
Madden & Stewart, but with the creditors who became parties
to the composition, and any separate agreement by which the
plaintiffs secured to themselves more advantageous terms,
whether entered into with the debtors, or with third parties,
was a fraud upon the other creditors, and void. (Cullingworth
a. Lloyd, 2 *Beav.*, 385; Cockshott a. Bennett, 2 *T. R.*, 763;
Smith a. Cuff, 6 *M. & Selw.*, 160; Wilson a. Wray, 2 *Per.
& D.*, 253; Howden a. Haigh, 11 *Ad. & E.*, 1033; Faucett a.
Gee, 3 *Anst.*, 910; Constantine a. Black, 1 *Cox*, 287; Cecil
a. Plaistow, 1 *Anst.*, 202; Alsager a. Spalding, 4 *Bing., N. C.*,
407.) Such an agreement is equally void, whether made after
all the other creditors have signed, or whether before or after the
creditor who makes it has signed (Mawson a. Stock, 6 *Ves.*, 300;
Jackman a. Mitchell, 13 *Ib.*, 586; *Ex parte* Hall, 1 *Deac.*, 171;
Turner a. Hoole, *Dow. & Ky., N. P.*, 27); and though the effect

of it was not to secure to the creditors a greater sum than the other creditors were to receive, but only additional security (Leicester *a.* Rose, 4 *East,* 372; 1 *Smith* [*Eng.*], 41), and though that security be given to the creditor by a third party, even without the knowledge of the debtor. (Knight *a.* Hunt, 5 *Bing.,* 432.) In this case the plaintiff, by signing the agreement for a composition, agreed to release Madden & Stewart, upon their giving their promissory notes at six, twelve, and eighteen months, for sixty-two and a half cents upon the dollar of the amount due by them, upon paying these notes at maturity, and paying to the plaintiff, upon the residue of their debt, their proportion pro rata of whatever income should accrue to Madden & Stewart from leases held by them of stores upon Broadway. The plaintiff, when applied to, put off signing the composition agreement until all the other creditors had signed, and then refused to sign unless Madden & Stewart would secure the composition-notes by the indorsement of the defendants, and give their own notes for the remainder of the debt. Madden & Stewart procured Farrell, one of the defendants, to indorse the composition-notes in the name of his firm, which he did without the knowledge of the other defendant, who was then absent; and the notes thus indorsed were given to the plaintiff, together with Madden & Stewart's notes for the balance of the debt, upon which the plaintiff signed the composition agreement. The present action was brought against the defendants as indorsers of the composition-notes.

It is settled by the authorities cited, that a security obtained under such circumstances cannot be enforced. "Agreements for composition with creditors," says BEST, C. J., in Knight *a.* Hunt (*supra*), "require the strictest good faith." All who sign the composition agreement bind themselves to the debtor and to each other, to compound with the debtor upon the terms and conditions set forth in the agreement; and no one of them, by a separate agreement with the debtor, or with any other party upon his behalf, can obtain any thing more. If the defendants' indorsement, therefore, was given as an inducement to the plaintiffs to sign the composition agreement, the plaintiffs can have no benefit from it, for, as parties to that instrument, they must, in good faith to all the other creditors, be held strictly to its terms. The plaintiff, Pinneo, says that he did not intend to

accept the compromise, and that it was in consequence of his refusal to accept it that the arrangement referred to was entered into with Madden. If this were so, if he did not intend to release the debtors at all, but merely to extend the time for the payment of the whole debt, upon receiving the defendants' indorsement as a security for the payment of the principal part of it, then why did he sign the composition agreement? He says that he refused to sign it both before and after he received the new notes with the defendants' indorsement; that when he received these notes, he gave the old notes to Madden, as a sufficient receipt, and that it was some time after that, that he signed the composition agreement. He testified that he was *very strongly impressed with the belief* that Madden came to his store, and asked as a favor that the plaintiffs should sign it; that he urged him to do so, and that he finally consented and did so; that he signed it ultimately, showing that he had accepted the terms upon Madden's earnest request. He says further, that Madden told him that he wanted all his creditors to come into the arrangement, but that he declined to sign because he did not intend to accept the terms; that he had no recollection at any time of telling Madden to get other creditors to sign before the plaintiffs would; that he may have said so at the first interview, and thinks it quite likely that he did, and that it was possible that he may have said so at a subsequent interview, although he had no recollection of it, and that Madden may have told him that it was necessary that all his creditors should sign the paper. Here is the important admission that he thought it quite likely that he told Madden at the first interview, to get the other creditors to sign before the plaintiffs would,—equivalent to an agreement that the plaintiffs would sign if the other creditors did. All the other creditors were obtained, and after that Pinneo signed, on behalf of his firm. The testimony of Madden shows very clearly how the plaintiffs' signature was obtained. He says he applied to Pinneo to sign, and he told him to get the signatures of *some* of the other creditors before he would sign, in which he is corroborated by the witness Phillips; that he had repeated interviews with him afterwards before he would sign; that he put him off several times, telling him that as soon as he got *more* of the creditors to sign, to call again; and that after he got all the

creditors, he called upon him again, and he refused to sign unless he got some indorsement upon the composition-note, and gave the notes of Madden & Stewart for the residue of the debt. That after he gave him the notes with the defendants' indorsement, he did not want to sign, but said he would give a guaranty. He then asked him for a receipt for the notes, receipts having been given by the other creditors when they received the composition paper, but Pinneo says he did not want to sign a receipt, as it might compromise him at some future time. Pinneo testified that after he received the new notes, Madden wanted him to sign, and he refused to do so; that he never consented to sign the composition agreement until the moment he signed it; that he was sure of that, and that he signed it as a personal favor to Madden to relieve the apparent impression on his mind, that after the plaintiff had given up the old notes, they had some claim, and he wanted some written document to show that he had settled. This I did not believe, because it was in conflict with the testimony of Madden, and from its intrinsic improbability. I did not believe that a business man, receiving the notes originally given for the debt, and giving to his creditor new notes in their stead, of the same amount, would be under any apprehension that his creditor would have any claim that would not be embraced in the notes given in renewal; or that he wanted Pinneo, from any such apprehension, to sign the composition agreement to show that he had settled. There was no settlement. It was, according to Pinneo's account, simply an extension of credit, and the signing of the composition agreement would show nothing, except that the plaintiff had agreed to that compromise. I believed the statement of Madden, as more consistent and probable, supported as it was by the testimony of Farrell. Madden testified that the new notes were given, and the composition agreement was signed, at the same interview; that when he gave Pinneo the notes, Pinneo did not want to sign the paper, but that he refused to give them unless the plaintiff signed it, as Farrell and others had refused to let him have goods unless they saw the paper signed; that Pinneo then signed the composition agreement,—whereupon Madden gave the notes, and took the agreement signed by the plaintiffs back to Farrell and showed it to him. And Farrell testified that Mad-

den exhibited the agreement to him, signed by the plaintiffs, upon the same day that he, Farrell, indorsed the notes. Madden also testified that Pinneo did not at any time tell him that he would not under any circumstances sign the composition agreement; upon which point, as well as in respect to the statement of Pinneo that he signed it some time after he received the notes, he contradicted Pinneo. My conclusion upon the evidence was, that Pinneo held out to Madden that he would unite in the composition if the other creditors did. That when the other creditors had signed, he sought to obtain better terms: that he then agreed to sign if these terms were complied with, and finally did sign because they were complied with. That he tried to avoid signing, proposing to give a guaranty, and finally put his name to the paper when he found that he could get the notes in no other way. This was a fraud upon the other creditors, and the plaintiffs should not be allowed to have the advantage of it. To my mind, upon the trial, it was a very plain case, and after deliberately reviewing it upon this appeal, my conviction remains unaltered.

HILTON, J.—I think that the evidence given at the trial fully sustained the finding of the judge; that the consideration for the note in suit, was the signing by the plaintiffs of the composition-deed of Madden & Stewart. Pinneo and Madden were in direct conflict respecting the time when, and the object for which, the note was given; but the testimony of Farrell, that on the same day he indorsed the notes Madden showed him the deeds signed by the plaintiffs, being corroborative of Madden on this point, and in direct opposition to the statements of Pinneo, that he did not sign the deed until some time after receiving the note, left, it seems to me, no reason for hesitating in determining as to whose testimony, respecting the transaction, was the most to be relied on.

Assuming, then, that the statements of Madden respecting the origin of the note are correct, the case presented to us is briefly this: Madden & Stewart, being insolvent, procured the signatures of all their creditors to a composition-deed, by which it was agreed to accept the notes of Madden & Stewart at the rate of sixty-two and one-half cents on the dollar of their indebtedness; and on the payment of these notes, together with

Pinneo a. Higgins.

what might be derived from certain leases, they were to be discharged from all claims and demands. The plaintiffs became parties to this instrument, but as a condition to their signing, they exacted from Madden & Stewart the indorsement of the defendants upon the notes which they were to, and did, receive for their claim; and thus acquired an advantage over that of any of the other compounding creditors, which they now seek to enforce in this action against the indorsers upon one of the notes so taken.

I think there cannot be a doubt that an indorsement by way of security, obtained under such circumstances, is ineffectual and void, upon the ground that an advantage secured to one of the creditors which is denied to the others, is a fraud upon those from whom it is concealed, although it has not, and cannot have, the effect of depriving them of any part of the sum which they agreed to accept in compromise of their demands. It is a fact concealed from them which they are entitled to know, and, if known, might have deterred them from entering into the composition. The deed is to be regarded as speaking the language of all the creditors, not only to the debtor, but to each other, and must be considered as a common declaration that the security mentioned in it is intended to be taken in full discharge of their respective debts. (Sadler a. Jackson, 15 *Ves.*, 52; Leicester a. Rose, 4 *East*, 372; Cockshott a. Bennett, 2 *T. R.*, 763; Jackson a. Lomos, 4 *Ib.*, 166; Breck a. Cole, 4 *Sandf.*, 79.)

So scrupulous are courts in compelling creditors to the observance of good faith towards one another in cases of this kind, that any *security* taken for an amount beyond the composition agreed upon, *or even for that sum*, better than that which is common to all, if unknown at the time to the other creditors, is void and inoperative. (NELSON, Ch. J., Russell a. Rogers, 10 *Wend.*, 473.) And in the absence of any proof of such knowledge on the part of the other creditors, it must, upon the instrument, be presumed that they did not know it. (Sadler a. Jackson, *supra*.)

Judgment affirmed.