MARCH TERM, 1868.        397

O'Shea, Adm'r of Sullivan, v. Collier White Lead & Oil Co. et al.

JOSEPH M. O'SHEA, Administrator of JOHN D. SULLIVAN, Appellant, *v.* THE COLLIER WHITE LEAD AND OIL COMPANY, and EDWARD BREDELL, Respondents.

1. *Fraudulent Conveyances — Assignments — Secret Preferences.*—In a deed of composition made by a debtor for the benefit of his creditors at large, each creditor who signs it comes into the agreement on the understanding that all will share mutually, or according to the terms embodied in the instrument. And if the signatures of some of the creditors have been obtained by secret bargains or obligations granting them more favorable terms than the general scope and provisions of the composition deed will warrant, a gross deception is practiced on the other creditors, and both law and equity adjudge the transaction void. And any security given in pursuance of such contracts is absolutely void, even against the debtor who may have given such security. But an instrument creating an obligation of preference may be valid if it form part of the original transaction and be communicated to the other creditors and they do not object.
2. *Fraudulent Conveyances —Assignments — Secret Preferences — Public Policy.*—Such an agreement is against public policy—such an one as the law deems constructively fraudulent—and must therefore be held incapable of enforcement.

*Appeal from St. Louis Circuit Court.*

John D. Sullivan, plaintiff's intestate, was indorser for Cornelius D. Sullivan upon two promissory notes, amounting to about ten thousand dollars, on which judgment was obtained against both parties, and certain real estate of C. D. Sullivan was sold to satisfy it. John M. Krum was the purchaser, and afterward, on May 9, 1862, conveyed the land to John D. Sullivan, who paid the debt. Previous to the sale of this land Joseph L. Papin and Ben. F. C. Champion, trading under the name of Champion & Co., had become embarrassed in business, and made proposals to their creditors asking for terms of extension and composition. The Collier White Lead and Oil Company were large creditors, and, together with other parties, had instituted several attachment suits to secure their claims. After some negotiation a deed of composition was entered into between Champion & Co. and the creditors at large, by the terms of which a lot of land and certain assets of the company were transferred to trustees for the benefit of the creditors, an extension was granted, and

the attachment suits were dismissed. But in consideration of their relinquishing their attachment, Champion & Co. procured from C. D. Sullivan certain notes secured by a deed of trust, dated January 23, 1858, and recorded February 10, 1858, upon the property afterward sold under execution to Krum, which notes were given to the Collier White Lead and Oil Company as collateral security for the payment of the debt of Champion & Co. The trustees of the Collier White Lead and Oil Company were proceeding to sell this land for the satisfaction of their debt, when this suit was instituted by John D. Sullivan's administrator to enjoin the proceedings — plaintiff claiming the property by virtue of the purchase from Krum, and contending that the deed of trust to the Collier Company was a secret deed, in fraud of the remaining creditors, and therefore null and void.

*T. T. Gantt*, for appellant.

I. 1. The testimony shows that the arrangement by means of which the Collier White Lead Company received the collateral security from Sullivan was a secret one, of which the creditors generally had no notice or knowledge.

2. If the fact were so, the arrangement was a fraud on the other creditors, and the Collier White Lead and Oil Company cannot enforce the security so taken. It is null and void. (Smith v. Bromley, Douglas, 696, *n.*; Cockshott v. Bennett, 2 T. R. 763; Jackson v. Lomax, 4 *id.* 166; Leicester v. Rose, 4 East. 372; Jackson v. Davison, 4 Barn. & Ald. 695–7; Lewis v. Jones, 4 Barn. & Cres. 511–15; Clark v. Upton, 3 Man. & Ry. 89; Wood v. Roberts, 2 Starkie, 417; Smith v. Cuff, 6 Maule & S. 160; Turner v. Howle, 16 Eng. C. L. R. 418; Case v. Gerrish, 15 Pick. 50; Payne v. Eden, 3 Carnes, 213; Wiggins v. Bush, 12 Johns. 306; Clark v. White, 12 Pet. 178, 199; 2 Spence's Eq. Jur. 358–9; Chitty on Cont. 586, last ed.; Pendlebury v. Walker, 4 Young & Col. 440; Knight v. Hunt, 5 Bing. 432; Notes to Chitty on Bills, 96; Jackson v. Mitchell, 13 Ves. 586; 1 Story's Eq. §§ 378–9; Willard's Eq. Jur. 209–10.)

3. It makes no difference that the property or thing thus received by way of giving one creditor the preference over the

rest was the property of the bankrupt or the note of some friend of the bankrupt or insolvent. (Knight v. Hunt, 5 Bing. 432; Pendlebury v. Walker, 4 Young & Col. 440; 1 Story's Eq. § 379, and cases there cited.)

4. It is incontestable that all the creditors did not have notice or intimation of this secret arrangement, and very doubtful whether any one else had, unless possibly such as had constructive notice, which is not the sort of notice contemplated by the law. If any one creditor be misled or defrauded, it is enough. (Jackman v. Mitchell, 13 Ves. 586; Pendlebury v. Walker, 4 Young & Col. 440, and cases *supra*.)

The rule laid down on the subject of creditors making underhand and secret arrangements with an insolvent, by which, though appearing to stand on the same footing of equality with other creditors, or at least to stand on the terms of the deed of composition, one of them obtains an additional sum of money or security for money from the insolvent or any friend of the insolvent, is very well ascertained, and is laid down without qualification both in England and America. The rule is thus laid down by Willard in his Equity Jurisprudence, pp. 209–10: "A bond to one creditor to secure the deficiency of composition, not communicated to the others, is bad." Per Lord Eldon (Jackman v. Mitchell, 13 Ves. 586): " It is admitted at the bar that if the bond was given to secure to one creditor the deficiency of a composition, and was given without communication of that fact to the other creditors, it is bad in equity, and certainly it is now well understood that it is bad at law also." In Pendlebury v. Walker, 4 Young & Col. 440, it is declared that any one of the creditors to whom such a fact is not communicated can rescind the whole composition; and the correlative of this proposition is that the failure to communicate the giving of this "outside security" to all the creditors makes the security itself void in the hands of whomsoever and against whomsoever. This is the effect assigned to the noncommunication of such an advantage by the party obtaining it to all of those who can in any way be influenced by his example, by all the authorities cited under section 2, *supra*.

II. The general proposition that the failure to communicate

the fact of such " outside security" to any of the creditors vitiates the security obtained of the party to the secret arrangement, would seem not open to contest or question. The court below, however, appears to have ingrafted upon this proposition this qualification, viz : That there must be a *scienter dolus malus* on the part of the preferred creditor in the non-communication to the others of his outside bargain. If he supposed he was merely doing something of special shrewdness, doubtful perhaps in point of honor, but not forbidden by the law, his security is good. But this qualification cannot be supported. The law enjoins upon the creditors of an insolvent, met to consider terms of composition, the observance of the utmost good faith; *"uberrima fides"* is required of them all. In such a case equality is most emphatically equity. Each one is necessarily influenced by the action of the others, and every one who " comes into " the proposed arrangement allures others to follow his example. If any one becomes such a party for reasons not appearing, a plain fraud is committed upon the others, because they are misled by conduct of which the secret differ materially from the ostensible springs. How is the mischievous effect of this conduct altered by the intention which governs the party ? It may affect his moral position, but nothing else. There is no warrant anywhere in the authorities for holding *dolus malus* on the part of the preferred creditor to be necessary in order to avoid the security which he takes. The subject is pointedly one of constructive, not actual, fraud. (1 Story's Eq. § 379.) The rule of the various courts that have decided questions arising on this point is, that every creditor is entitled to have communicated to him (not another) the facts by which the conduct which he is called to imitate is influenced; and every one toward whom any concealment or want of communication, or non-communication, is observed or practiced (and the motive of the concealment or non-communication is of no earthly consequence) is injured, defrauded, and deceived, and for this reason the law makes utterly void all payments made on any security for payments to be made to any creditor stipulating for any such unfair advantage and preference. The Massachusetts and New York decisions are very emphatic. They permit money already paid

under such circumstances to be recovered back. In Massachusetts, at least, this does not result from statutory regulation; and in New York the statute goes really no further than do the Court of King's Bench and the Court of Chancery in England. Lord Eldon, 13 Ves. 586, considered it necessary to decide expressly that bonds " creating an obligation to pay the deficiency of a com-position " were not in all cases void, and instanced one case in which such a bond, being made known to the other creditors and assented to by them, was "held to be good." (Pendlebury v. Walker, 4 Young & Col. 440 ; Cockshott v. Bennett, 2 T. R. 763 ; 14 East. 372 ; 4 T. R. 166 ; Jackson v. Lomax, 4 Barn. & Ald. 695 ; 2 Starkie, 417 ; 16 Eng. C. L. R. 418 ; 6 Maule & S. 160 ; 3 Carnes' Rep. 213.)

*Cline, Jamison & Day*, for respondents.

I. The deed of composition and agreement signed by the credit-ors expressly recognized the security of the Collier White Lead Company. By them the creditors were not placed upon an equal footing. They merely extended the time of payment, and classified the payment of the debts out of the property assigned, as follows : 1st. Notes indorsed by Robert Forsyth. 2d. Notes indorsed by C. D. Sullivan and others. 3d. Debts secured by attachment suits not previously secured. 4th. All other debts of the assign-ors not above provided for. (Lee v. Lockhart, 3 Mylne & Cr. 302.) The deed of trust by C. D. Sullivan to the Collier White Lead and Oil Company was executed and recorded in the recorder's office, February 16, 1858, and the deeds of assignment and com-position were executed and recorded February 22, 1858. Thus the Collier Company, an attaching creditor, was previously secured, as mentioned and provided for in the composition deed and agreement of the creditors.

II. The execution of the notes and deed of trust by C. D. Sullivan to the Collier White Lead and Oil Company, for a part of the debt due it by Champion & Co., was not kept secret, nor attempted nor intended so to be kept, from the creditors of Champion & Co. or any of them, as appears from the agreement and the testimony of witnesses. All of the creditors and indorsers

of the assignors knew that said Collier Company had secured its debt by attachment suits, and knew it would not dismiss them and sign the composition deed unless its debt was secured. All the indorsers and a large number of the creditors knew that said Collier Company were secured by the indorsers prior to the signing or execution of the deed of composition.

III. The Collier Company, by accepting the notes secured by the deed of trust of C. D. Sullivan and other indorsers of Champion & Co., obtained no undue advantage over the other creditors, having by its superior diligence secured the debt by attachment suits. (Clarke v. White, 12 Pet. 178–199.) The property attached was ample security.

IV. There was no fraud, constructive or express, in the transaction. The Collier Company, its officers and its agents, in the whole transaction acted in good faith. There was no secrecy or concealment attempted or intended. The indorsers and creditors knew of the arrangement. The Collier Company, having by its activity and diligence secured the debt, finally agreed to substitute the notes of the indorsers of the assignors in lieu of the property attached, as provided for in the composition deed or agreement of the creditors, whereby the other creditors obtained all the benefit of this property attached. The consideration was legal and valid. The Collier Company released its attachment suits, and C. D. Sullivan was released of his indorsements to the amount of $80,000.

V. The signing of the composition deed by the Collier Company did not induce any of the creditors to sign the same. (Lewis v. Jones, 4 Barn. & Cres. 511.)

VI. The Collier Company did not receive or realize anything from the property of the assignors, nor from the property assigned, all of which the other creditors received the benefit of. Thus the Collier Company, by signing the composition deed, benefited the other creditors instead of injuring them, and of course they would have no ground of complaint.

VII. Public policy does not require the court to interfere, as there was no fraud in the transaction and the contract was a legal and valid one.

WAGNER, Judge, delivered the opinion of the court.

Champion & Co., being in failing circumstances, and in fact insolvent, made a proposal to their creditors for a composition, for the completion of which the consent of all the creditors was necessary. They assigned all their property to certain trustees, who were, as speedily as possible, to turn the property into available assets and pay off the debts and distribute the assets in the manner designated in the deed of assignment. The agreement for the composition was signed with the express understanding and upon the condition that all the creditors should assent thereto. The Collier White Lead and Oil Company and other creditors had previously taken out attachments and levied the same upon the property of Champion & Co. Nothing could be done toward perfecting the arrangements for a composition between the creditors till these attachments were dismissed. Finally the Collier White Lead Company, who had for some time refused, acceded to the agreement and dismissed their attachment, and the other attaching creditors also dismissed theirs, and the whole scheme was consummated. Before, however, the company gave their consent and dismissed their suit for attachment, they procured from the partnership fund of Champion & Co. collateral security to fully indemnify and make secure their claim, and thus gained a preference over the other creditors.

The evidence is conflicting as to the secrecy with which this transaction was entered into, but it fully appears that but a small portion of the creditors were cognizant of it. This suit was brought to enjoin the company from selling the real estate, on which they had a deed of trust to secure them in their preference over the other creditors. The court below having given a decree dissolving the injunction and dismissing the suit, the cause is now here on appeal. There is but a single point to be passed on, and that is, did the taking the additional security by the Collier White Lead Company operate as a fraud on the other creditors and render the security void? Between the parties to the arrangement there may be no actual fraud, but the tendency is to defraud the other creditors; and therefore, on grounds of public policy, it is

held to be constructively fraudulent, and condemned both at law and in equity. The purport of a composition is that the property of the debtor shall be assigned to trustees, and shall be collected and distributed by them among the creditors according to the order and terms prescribed in the deed itself. In all transactions of this description the utmost good faith is required, as each one signs the deed and comes into the agreement on the understanding that they will share mutually, or according to the terms embodied in the instrument. But if the signatures of some of the creditors have been obtained by secret bargains or obligations granting them more favorable terms than the general scope and provisions of the composition deed will warrant, a gross deception is practiced on the other creditors, and both law and equity adjudge the transaction void. (1 Story's Eq. § 378; Willard's Eq. 209.)

Every creditor has a direct interest that the agreement should be fairly performed. And where any creditor, unknown to the others, has obtained any benefit beyond what the others have obtained, the others are cheated and imposed upon, and the private contract entered into is a fraud on the arrangement, and any security given in pursuance of such contract is absolutely void, even against the debtor who may have given such security. (Cockshott v. Bennett, 2 T. R. 765; Eastabrook v. Scott, 3 Ves. 460; Mawson v. Stock, 6 Ves. 301; Ex parte Sadler, 15 Ves. 55; Leicester v. Rose, 4 East. 379; Jackson v. Davison, 4 Barn. & Ald. 695; Pendlebury v. Walker, 4 Young & Col. 424.)

The cases generally proceed on the ground that the transaction complained of was secret and unknown to the other creditors; but an instrument creating an obligation of preference may be valid if it form part of the original transaction and be communicated to the other creditors and they do not object. In Jackman v. Mitchell, 13 Ves. 581, Lord Chancellor Eldon said: "I remember the case of a person named Hebblewaite, who had made a composition with his creditors and secured the deficiency to one creditor by a bond, and that was held good in this court by Lord Thurlow; and it was part of the transaction that that dealing should not be kept secret, but should be communicated to the other

creditors; and as they did not object, Lord Thurlow held it good." In that case the matter was brought home to all the other creditors, and, as they made no objection, their assent was presumed.

In the present case no such acquiescence appears. Many of the creditors or their representatives swear positively that they knew nothing about the arrangement, and there is no evidence tending to show that more than a very small minority of them had any knowledge of it. That a few had an understanding or impression of its existence cannot change the rules of law. Their claims may have been insignificant, or from other reasons they might have been satisfied, whilst the others would have interposed a decided objection. We are not at liberty to speculate by arithmetical calculation as to the probable effect the consent of a part would have in determining the fairness of the transaction or the rights of the parties. Besides the unbroken current of decisions in England, the American cases all support the views above indicated. (Yeomans v. Chatterton, 9 Johns. 295; Payne v. Eden, 3 Carnes, 213; Wiggins v. Bush, 12 Johns. 306; Tuxbury v. Miller 19 Johns. 311.)

The case of Case v. Gerrish, 15 Pick. 49, is almost precisely parallel with this; and Shaw, C. J., seems to regard the rule as too clearly settled to require any argument.

The authorities cited by the respondents furnish no aid to their view of the law. In Lee v. Lockhart, 3 My. & Cr. 302, where the creditor had the benefit of his security, there was no contract or common purpose between the mortgagees and other creditors. There was, besides, an indorsement on the deed reserving to the creditor his right under his security, which was evidence of *bona fides* and of all absence of concealment.

In Clark *et al.* v. White, 12 Pet. 199, the court enunciated the very doctrine above laid down and enforced, and expressly says: "If, upon failure or insolvency, one creditor goes into a contract of general composition common to the others, at the same time having an underhand agreement with the debtor to receive a larger per cent., such agreement is fraudulent and void, and cannot be enforced against the debtor or any surety to it."

The agreement entered into in this case, by which the respond-

ents obtained additional security and gained an advantage over the other creditors, is against public policy — such an one as the law deems constructively fraudulent — and must therefore be held incapable of enforcement.

The judgment will be reversed and the cause remanded. The other judges concur.*