## Case No. 1,170.

### BEAN v. BROOKMIRE et al.

[2 Dill. 108;[1] 7 N. B. R. 568; 5 Chi. Leg. News, 314; 2 Am. Law Rec. 222; 6 Am. Law T. Rep. 418; 7 West. Jur. 324.]

Circuit Court, E. D. Missouri, 1873.

BANKRUPTCY—COMPOSITION DEEDS—SECRET PREFERENCES — RECOVERY BACK OF MONEY PAID BY WAY OF ILLEGAL PREFERENCE.

1. Parties who sign composition deeds must do so in good faith.

[Cited in Brookmire v. Bean, Case No. 1,942; Fairbanks v. Amoskeag Nat. Bank, 38 Fed. 634.]

2. Secret preferences paid as inducements to obtain signatures of creditors to composition deeds, can be recovered by the debtor himself, or by injured creditors, or by an assignee in bankruptcy, who represents both debtor and creditor.

[Cited in Brookmire v. Bean, Case No. 1,942.]

3. Such recovery may be at law or in equity.

4. It is no defense to such an action that the composition deed was invalid, because not signed by all the creditors, pursuant to its terms, it appearing that the greater part of the creditors believed that the composition had been signed by all the creditors in good faith.

[Cited in Brookmire v. Bean, Case No. 1,942.]

In equity. This cause was before the court on a former appeal. Bean v. Brookmire, [Case No. 1,169.] After it was remanded, an answer and replication were filed, testimony was taken, the cause heard on its merits, and a decree entered in favor of the assignee [William C. Bean] for the sum of $1,436.02 and interest against the defendants Brookmire & Rankin. The bill was dismissed as to Laflin. To reverse the decree against them, Brookmire & Rankin now bring the cause here by appeal. [Affirmed.]

The plaintiff is the assignee in bankruptcy of Charles S. Kintzing, who was the successor of the firm of Charles S. Kintzing & Co., wholesale grocery merchants in St. Louis. Kintzing & Co. were largely indebted, and being unable to go on with their business, they called, on the 15th day of February, 1869, a meeting of their creditors. Many of their local and some of their non-resident creditors were represented at this meeting, but a large number of creditors was not present. An exhibit of their affairs was made showing liabilities to the amount of $179,299.-54, and assets, nominally, to the amount of $204,602.80, which last sum included $51,704.-50 of suspended debts, and $65,386.69 due from "the Montana branch."

Kintzing, acting for Kintzing & Co., proposed to pay their creditors seventy cents on the dollar in six, twelve, and eighteen months, and to give notes for the installments; and a composition agreement in the usual form was prepared accordingly, dated February 15, 1869.

This agreement, after providing that upon the payment of the notes given in settlement the firm should be released from all liability,

contained the following: "We have entered into this compromise with the said firm of Charles S. Kintzing & Co., after hearing and seeing a statement of their books, assets, and effects, and find that it is the best, in our judgment, that can be done for the interest of all concerned. And further, that we have full confidence in the integrity of Charles S. Kintzing, and his ability to settle up the business better than any one we could appoint; but it is further expressly agreed and understood that this composition is not to be binding upon any one, unless agreed to and signed by all of the creditors of the said firm. In witness whereof, we have hereunto set our respective names, and desire the co-operation of all of the creditors with us in this compromise."

A question growing out of this agreement was before this court in Kintzing's Assignee v. Bartholew, [Case No. 7,831.] Creditors whose claims amounted to $153,558.21 ultimately signed the agreement; but creditors, over thirty in number, whose claims, mostly small, in the aggregate amounted to $2,313.53, never signed it. The last name appearing to the agreement was that of the firm of L. E. Amsinck & Co., of New York, creditors to the amount of $32,551.65. The circumstances under which they signed it appear in the case of Bean v. Amsinck, recently (January, 1873) decided in the United States circuit court for the southern district of New York. [Case No. 1,167.]

Kintzing & Co. were indebted to the defendants, Brookmire & Rankin, merchants residing also in St. Louis, upon a promissory note for $1,436.02, dated January 4, 1869, and payable thirty days from its date.

Brookmire & Rankin refused to attend the meeting of the creditors on the 15th day of February, and declined to join in the proposed compromise, but, on the contrary, had commenced suit on their note in the state court to recover the amount thereof from Kintzing & Co. This suit was pending at the time the negotiations for a compromise were going on. A committee of creditors waited on them to induce them to unite with the rest, but they refused, saying that they had no confidence in Kintzing, and that they thought they could collect the whole amount of their debt.

The next to the last name appearing to be signed to the composition agreement is that of the firm of Brookmire & Rankin, purporting to be creditors of Kintzing & Co. for $1,-436.02. The defendants' names were affixed to the agreement by Sylvester H. Laflin, on the 17th day of March, 1869, under the circumstances stated in the opinion of the court.

On the same day (March 17), Kintzing enclosed compromise notes to various non-resident creditors representing that his articles of compromise had been completed. The compromise notes matured on the 18th day of August. Kintzing made a voluntary assignment, under the state law, and on the 17th

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

day of September, 1869, was proceeded against in bankruptcy, and such proceedings were had that the plaintiff was appointed his assignee.

The present suit is brought to recover of the defendants the $1,436.02 paid to them on the 17th day of March, with interest. The substantial nature of the bill is stated in [Bean v. Brookmire, Cases Nos. 1,168 and 1,169.] The answer admits the payment, but denies the imputed fraud and all liability to account for or return the money. As before stated, the court entered a decree for the assignee, and the defendants, Brookmire & Rankin, appeal. No appeal is taken from that part of the decree dismissing the bill as to Laflin.

Edmund T. Allen, for appellee.
G. M. Stewart, for appellants.

DILLON, Circuit Judge. Kintzing was embarrassed, and on the 15th day of February, 1869, called a meeting of his creditors at his place of business in St. Louis. The defendants refused to attend. The creditors present, after an exhibit of his affairs, agreed to the proposal to take seventy cents on the dollar in notes at six, twelve, and eighteen months, without interest, and a composition article to that effect was drawn up. This was to be signed by all his creditors, and contemplated placing all upon an equal footing. This appears upon its face.

By the middle of March following this agreement had been signed by the great bulk of the creditors in number and amount. Those who had not signed it were the defendants; also, Amsinck & Co., who were creditors for over $32,000; Bartholew, Lewis, & Co. (defendants' local bankers) [Bean v. Brookmire, Case No. 1,169,] and sundry small creditors, over thirty in number, and whose claims in the aggregate amounted to something over $2,000.

It was known generally to the creditors in St. Louis that the defendants had not acceded to the compromise proposed, and that they declined to do so. The defendants had, indeed, made known their refusal to a delegation of creditors who had waited upon them and urged their concurrence. Not only had they thus refused, but they had a suit upon their note pending against Kintzing & Co. in the local courts. Kintzing found that the claim of the defendants stood in the way of completing the desired arrangements, and that the defendants must in some way be satisfied, or their names procured to the composition agreement. He pursued this course: He procured from Bartholew, Lewis, & Co., or drew upon his account at the bank, the full amount of the defendants' note, placed the money thus obtained in a package and left it at the bank, with directions to deliver it to Sylvester H. Laflin. He then requested Laflin (a friend of his, and a distant relative of Brookmire's) to act for him in negotiating with the defendants. He directed Laflin to call upon Bartholew, Lewis, & Co. for a package of money, and then go to the defendants and do the best he could with them. On the 17th day of March, 1869, Laflin accordingly obtained from Bartholew, Lewis, & Co. the package of money Kintzing had provided for him; he went at once to the defendants' store; said he had called to pay or take up the Kintzing note; was informed it was at the court house, and then requested that it be sent for, which was done. The note being produced, he made an appeal to the defendants to throw off part of their demand, saying (according to the weight of testimony) that the money had been raised by himself and Kintzing's friends, or by the latter, to help him through, and he wanted the defendants to make it as easy as possible. There is no evidence that this statement is true in point of fact, and Laflin denies that he stated that he had contributed to raise the money. Upon the proofs we find that the money was Kintzing's, and that no part of it had been furnished by any one else. Defendants refused to make any substantial deduction, but at length threw off one month's interest and agreed to pay the costs of court. The money was handed by Laflin to the defendants and counted by their book-keeper, who made an entry at the time in the books of the defendants to the effect that the note had been "sold" to S. H. Laflin.

As to what occurred at this time there is among the witnesses on some points much forgetfulness and conflict. But certain it is that when the note was finally delivered to Laflin (which was at the time he paid the money) it contained this material indorsement made upon it at Laflin's request by Rankin, one of the defendants: "We authorize S. H. Laflin to sign for us. Brookmire & Rankin."

The court is obliged to find upon the evidence, and does find, that this referred to the composition agreement, and that it authorized Laflin to sign that for the defendants. With this indorsement upon the note it was delivered to Laflin, who, upon the same day, took it to Kintzing and signed the composition agreement, with the words, "Brookmire & Rankin, $1.436.02," without indicating on the paper that it was signed by him as their agent.

Just underneath the name of the defendants appears the name of the firm of Amsinck & Co., signed by F. A. Reuss & Co. as their attorneys, for the sum of $32,550.65. These two were the last signatures ever procured to the agreement. On the same day, March 17, Kintzing wrote various non-resident creditors to the effect that his compromise was "completed," and enclosed notes pursuant to the composition agreement. The creditors received these notes in settlement, and Kintzing continued in business without interruption or disturbance for the next six months. His failure to meet any of his com-

promise paper called attention to his affairs, and the result was an assignment, and, subsequently, proceedings in bankruptcy against him.

It is a fair deduction from the testimony, that the creditors generally, in good faith, supposed the compromise had been fully completed, and were not aware that a portion had never signed it, nor were they aware of the circumstances under which the defendants and a few others had received the full amount of their debts, or of any fact which made the composition invalid. During these six months Kintzing seems to have wasted or squandered the assets, and very greatly impaired his ability to pay his debts. None of the composition notes were ever paid.

Under the circumstances, the question is, Are the defendants liable to the assignee in respect to the money so paid to them by the bankrupt through the agency of Laflin?

And first, as to the form of the action. We decided on the former appeal—1 Dill. 151 [Bean v. Brookmire, Case No. 1,169]—that equity had jurisdiction, although it might be true that the assignee could have sued at law. Upon the authorities there can be no doubt of the correctness of this view, and the point need not further be discussed. Adams. Eq. 180; Mare v. Sandford, 1 Giff. 295; Jackman v. Mitchell, 13 Ves. 581; Cockshott v. Bennett, 2 Term R. 763; Constantein v. Blache, 1 Cox. Ch. 287.

Next, as to the merits of the cause. The defendants made the endorsement on the note: "We authorize S. H. Laflin to sign for us," and it was under authority thus given that he signed their name to the composition agreement. The evidence favors the view that the defendants at first objected to making this indorsement, and finally did it without much reflection, and upon Laflin's assurance that it would be all right and he would answer that the note should never come back or give them any further trouble. They did not seek Laflin or Kintzing, but were standing aloof from the proposed arrangement for a compromise and pursuing their own remedy against their debtor. True, the circumstances of the debtor were such that they could not obtain payment under a judgment against him which would not be liable to be defeated by the bankrupt act; still we have felt that their passive conduct in this matter hardly deserves the warm indignation which it has called forth from the assignee's counsel.

A creditor is not bound to accede to a compromise, nor is he legally censurable merely because he refuses to unite with others; nor is he morally censurable if his refusal proceeds from a want of confidence in the debtor. And this seems to have been the case of the defendants; and if they had received the money in payment of their note, not knowing it was Kintzing's, and believing it to be that of his friends, and had merely surrendered the note, perhaps they

could have retained it, or, though knowing it was Kintzing's, they could not be made to refund it, if he was not thrown into bankruptcy within four months thereafter. Bean v. Brookmire, [Case No. 1,168.]

But the defendants, unfortunately for them, were induced to empower Laflin to sign for them the composition agreement, and he did so. And the proposition must be true that the act of Laflin, thus authorized, is the same in legal effect as if the defendants had themselves signed the agreement with their own hands. It must be taken, then, that the defendants did sign the composition agreement, and that they agreed to do so as part of the transaction in which they received, less a trifling deduction, the full amount of their debt.

The rules of law respecting the good faith to be observed by all who unite in a composition agreement are well known and well settled, and rest upon the soundest policy and upon the clearest principles of equity, commercial morality, and fair dealing. The temptation to obtain undue or secret advantages is so great, that the necessity for the severe rules which have been declared by the courts to repress it, is undeniable. All must be open and fair. If a creditor, appealed to by his debtor, makes it a condition of his uniting in a composition, that he shall have any advantage not enjoyed or made known to the others, the transaction cannot stand either at law or in equity. It is a fraud upon creditors, and they can avoid it. It is treated as oppression or duress towards the debtor, and he may defend against any promise to pay made under such circumstances; or, if he has actually paid, he may recover back the amount, as the law does not consider the parties as being in pari delicto, nor regard the payments thus made as voluntary, and allows such recovery on grounds of public policy. Breck v. Cole, 4 Sandf. 79; Pinneo v. Higgins, 12 Abb. Pr. 334; Atkinson v. Denby, 6 Hurl. & N. 778; on appeal, 7 Hurl. & N. 935; approving, Smith v. Bromley, 2 Doug. 696, note; Clay v. Ray, 17 C. B. 188; Leicester v. Rose, 4 East, 372; Jackman v. Mitchell, 13 Ves. 581; Knight v. Hunt, 5 Bing. 432; Bradshaw v. Bradshaw, 9 Mees. & W. 29; Wood v. Barker, L. R. 1 Eq. 139; Howden v. Haigh, 3 Perry & D. 661, 11 Adol. & E. 1033; Higgins v. Pitt, 4 Exch. 322; Wells v. Girling, 1 Brod. & B. 447, 4 Moore, 78; In re Hodgson, 4 De Gex & S. 354; Mallalieu v. Hodgson, 16 Adol. & E. (N. S.) 689; Cullingworth v. Loyd, 2 Beav. 385.

Aside from the question as to the effect of all not signing, presently to be noticed, it is incontestible that if the defendants, with one hundred cents on the dollar in their pockets, yet signed an agreement with the other creditors that they would take seventy cents on the dollar in the future, this would be a fraud which would give a right of action born to the debtor and to the creditors there-

by injured. And the assignee in bankruptcy represents both the rights of the bankrupt and of creditors who have been defrauded. Bankrupt Act, [1867; 14 Stat. 522,] § 14; Allen v. Massey, [Case No. 231,] affirmed in supreme court, [17 Wall. (84 U. S.) 351;] Bradshaw v. Klein, [Case No. 1,790;] Knowlton v. Moseley, 105 Mass. 139; Bean v. Amsinck, [Case No. 1,167.]

Now, with their debt substantially paid in full, the defendants signed, or authorized their names to be signed to, the composition agreement: and hence they are liable to the assignee unless there is some special ground of defense.

The defense relied on may be thus stated: By the terms of the composition agreement it is not to be binding upon any creditor unless it shall be signed by all; confessedly it was not signed by all, hence it never became a completed or effectual agreement, and therefore it was incapable, in the nature of things, of working any fraud upon the other creditors. And this position is sought to be strengthened by the argument that the defendants' conduct in signing the agreement in fact worked no fraud upon the creditors, because, at most, only one firm signed it afterwards, and there is no evidence that any of the creditors saw it or knew of it after the defendants' signature was placed upon it. We are compelled, however, to differ with counsel upon this point. It seems to us quite clear upon the proofs that the compromise would never have been regarded as completed without the defendants' signature. Other creditors knew they had refused to come in, knew they had a suit pending, and it is hardly probable that they would have accepted compromise notes and allowed Kintzing to proceed for six months, as if the composition agreement had been completed, if the transaction which led to the placing of the defendants' name to the paper had not taken place. Undoubtedly the local creditors were given to understand that the defendants had at length yielded, and come in with the rest, and the foreign creditors, as we have seen, were, on the same day that the defendants' name was placed upon the agreement, notified that it was completed, and they acted upon the truth of this statement, and received notes and gave time of payment in accordance with the terms of the composition article. We cannot agree, therefore, that the defendants' conduct has been innocuous; that it has, in fact, produced no injury. But still, the legal point above stated recurs; how can it be predicated of an instrument which by its own terms never became complete or binding, that it could operate to defraud or injure others? Plainly stated, the position of the defendants is this: The complaint is that we signed an agreement by which creditors have been defrauded; but how can an agreement which never became binding, operate to defraud or injure any one?

We have felt the force of this objection and own to some difficulty in satisfactorily answering it. Precisely the same point was made by Amsinck & Co. in the case of this plaintiff against them, and it was overruled by Judge Blatchford, on the ground that the defendants having acted under the agreement were estopped to deny its validity.

In this case we answer the objection as follows:—

1. The defendants' signature to the agreement having misled and injured other creditors, the defendants as against them are estopped to deny its validity.

2. The receipt of the debt in full, accompanied by an agreement to sign the composition article, was fraudulent, ab initio, and gives to the assignee, as representing creditors, the right to recover in respect thereto. See Alsager v. Spalding, 4 Bing. N. C. 407, and cases cited, supra.

3. The assignee represents as well any right of action the bankrupt would have had if bankruptcy had not supervened.

And as the defendants refused to take less than the full amount of their demand, and on receiving that actually did agree to sign the composition articles, or authorized them to be signed, it must be taken that the real contract between them and Kintzing, through his agent, was: "If you will pay us in full we will sign the compromise agreement," and if so, Kintzing would have had a clear right to recover back the amount paid, though the composition may have failed, and this right has devolved upon his assignee in bankruptcy. Atkinson v. Denby, supra, and other cases above cited.

The decree appealed from is therefore affirmed.

Affirmed.

NOTE, [from original report.] As to the presumption of law that all creditors who sign a composition deed are ignorant of any fact that would invalidate it, see Bean v. Amsinck, [Case No. 1,167;] Partridge v. Messer, (1859,) 14 Gray, 180; Ex parte Sadler, (1808,) 15 Ves. 59; Coleman v. Waller, (1829,) 3 Younge & J. 212; Pinneo v. Higgins, (1861,) 12 Abb. Pr. 343; Curran v. Munger, [Case No. 3,487.] As to the right of the assignee to recover simply as representing the bankrupt: Wood v. Barker, L. R. 1 Eq. 139; Alsager v. Spalding, (1838,) 4 Bing N. C. 407; Smith v. Cuff, (1807,) 6 Maule & S. 160; Turner v. Hoole, Dowl. & R. N. P. 27, 16 E. C. L. 418; Cockshott v. Bennett, (1788,) 2 Term R. 763; Howden v. Haigh, 3 Perry & D. 661, (1840,) 11 Adol. & E. 1033; Higgins v. Pitt, (1849,) 4 Exch. 322; Breck v. Cole, 4 Sandf. 79; Carroll v. Shields, 4 E. D. Smith, 466. Notes or securities fraudulently obtained cannot be enforced. Wells v. Girling, (1819,) 1 Brod. & B. 447, 4 Moore, 78; Constantein v. Blache, (1786,) 1 Cox, Ch. 287; Jackman v. Mitchell, (1807,) 13 Ves. 581; Ex parte Oliver, In re Hodgson, 4 De Gex & S. 354; Mallalieu v. Hodgson, (1851,) 16 Adol. & E. (N. S.) 689. As to right of the debtor, if not bankrupt, to recover back money extorted from him in order to induce a creditor to sign a composition agreement: Atkinson v. Denby, 6 Hurl. & N. 778; on appeal, (1862,) 7 Hurl. & N. 935; Clay v. Ray, 17 C. B. (N. S.) 188; Smith v. Bromley, (1760,) 1 Doug. 697, note; Adams, Eq. 180; Mare v. Sandford, (1859,) 1

Giff. 295; Partridge v. Messer, (1859,) 14 Gray, 180; Doughty v. Savage, (1859,) 28 Conn. 146; Pinneo v. Higgins, (1861,) 12 Abb. Pr. 334; O'Shea v. Collier White Lead & Oil Co., 42 Mo. 397. As to forfeiture by creditor of entire demand if guilty of fraud, see In re Cross, (1848,) 4 De Gex & S. 364; Howden v. Haigh, 3 Perry & D. 661, (1840,) 11 Adol. & E. 1033; Mallalieu v. Hodgson, (1851,) 16 Adol. & E. 689; Doughty v. Savage, (1859,) 28 Conn. 146; Bankrupt Act, [14 Stat. 534,] § 35, last clause; Carter v. McLaren, (1871,) L. R. 2 H. L. Sc. 120.

[For other cases involving this bankruptcy, see Bean v. Amsinck, Case No. 1,167; Bean v. Brookmire, Id. 1,168, Id. 1,169; Bean v. Laflin, Id. 1,172; Brookmire v. Bean, Id. 1,942; Kinsing's Assignee v. Bartholew, Id. 7,831; In re Kintzing, Id. 7,833.]