Lawrence, J.
— I am of the opinion, upon the evidence, that the agreement of April 4, 1873, must be regarded as having been entered into in consideration of and as part of the agreement of the plaintiff to subscribe for the 600 shares of the capital stock of the Blair Iron and Steel Company, the corporation mentioned and referred to in the pleadings in this *300 action. Such being the case, I am further of the opinion that the agreement in question, not having been disclosed to all the parties subscribing for the stock, was illegal and cannot be enforced.
In Adams agt. Outhouse (45 N. Y., 318, 322) judge Allen, in delivering the opinion of the court, in commenting upon the case of Bliss agt. Matteson (45 N. Y., 22), states “ that the case is authority for holding that the principles of Russell agt. Rogers (10 Wend., 473) and kindred cases apply to all-cases within the reason of the rule, and absolutely disables every one acting with others in a matter of common interest from securing to himself any particular profit or advantage over his associates by any secret or undisclosed agreement or understanding ” (See, also, Blodgett agt. Merrill, 20 Vt., 509.)
In the case of the White Mountains Railroad Company agt. Eastman (34 N. H. R., 124) it was held that “ a secret agreement entered into between the directors of a railroad corporation and subscriber for shares in its capital stock, that he'may within a specified time reduce the number of shares thus subscribed for, the subscription being held out as bona fide for the full amount, in order to induce others to become subscribers, is void as a fraud upon the other subscribers, and the original subscription may be enforced for its full amount between the corporation and the subscriber.” In that case Sawyer, J., most clearly states the principles which control cases of this description. At page 141 he says :
“ It is the secret stipulation alone which operates in fraud of others, and upon that the law leaves the parties where they stand, declining to enforce it for the benefit of either, while, as to the other part of the contract, to enforce it between the parties, is what is necessary to defeat their fraudulent purpose as to other innocent persons. That the proceeding is a fraud upon third persons is clear from the relation in which subscribers for stock in a corporation of this kind stand toward each other. In the subscription of each person, every other subscriber has a direct interest. Their respective subscrip *301 tions are contributions or advancements for a common object. The action of each in his subscription may be supposed to be influenced by that of the others, and every subscription to be based upon the ground that the others are what upon their face they purport to be. The fact that one man has bound himself to place a certain amount of his money upon the risk involved in the enterprise is an inducement to others to venture in like manner. Seeing who are his associates and the extent of the liability which they have assumed, he regulates his own upon that consideration, and though in form and legal effect the contract of each is with the corporation, yet among the subscribers themselves it is to be regarded as an agreement with every other subscriber to bear that proportion of the common burden to which he professes to bind himself by the contract which he holds out to them as his contract with the corporation. * * * The books abound with cases in which the principle is applied that a secret agreement between the parties to a contract, changing its character from what it ostensibly is, to the prejudice of others collaterally interested, is a fraud on them, and therefore void, even as between the parties themselves (Jackson agt. Duchaire, 3 T. R., 551; Wayburd agt. Stanton, 4 Esp., 179).”
It seems to me that the reasoning in that case demonstrates that the agreement upon which this action was brought was fraudulent as to the other subscribers to the stock in question, and that such agreement was therefore illegal and void. Messrs. Blair and Struthers, who made the agreement with the plaintiff which is the subject of this suit, in the prospectus which precedes the subscription paper, state that “ the capital stock of the Blair Iron and Steel Company is 25,000 shares of $100 each, $2,500,000. This capital has been paid up by the transfer of the patents for the Blair process and the works at Glenwood, Twenty-third ward of Pittsburg, Pa., to the company (the deed for the Glenwood property to be made as soon as any empowering act can be obtained from the Pennsylvania legislature, which we have bound ourselves to *302 procure), and the whole stock of said company, issued to us in payment thereof. We have agreed to place in the hands of General A. S. Diven, as trustee, 9,000 shares of this stock, to be used as working capital for the company, subject to the order of the board of trustess of said company, excepting $50,000 of the proceeds thereof, first to be paid to us by the said trustee. The trustees of the company have, with our consent, ordered the sale of 6,000 of said shares for the purpose of raising a present working capital and paying said $50,000, the minimum price to be fifty dollars per share. And said trustee, with the approbation of the board of trustees, now offers said 6,000 shares at said minimum price of fifty dollars per share, to be paid for as follows, viz., one-tliird part thereof as soon as the whole 6,000 shares shall be subscribed for, and the remainder in such installments as the board of trustees may call for the same for the purpose of the business, the certificates to be delivered when the whole shall be paid.” The subscription paper reads as follows:
“ We, the undersigned, hereby subscribe to the number of shares set opposite to our names respectively, to be paid for according to the terms above set forth; but this subscription not to be binding until the whole 6,000 shares shall have been reliably subscribed for.”
This subscription paper was signed by the plaintiff and by the other parties who subscribed for the said 6,000 shares of the capital stock of the company. I do not think that it can justly be contended that the plaintiff can be considered as having been a reliable subscriber within the meaning of the subscription paper. The evidence shows that some of the other subscribers had an agreement with the defendants in this action, similar to that upon which tiiis action is brought, but it is quite clear that several of the other subscribers did not receive any collateral agreement or guaranty, and that they did not know that such a guaranty had been given to the plaintiff or others (see testimony of Marquand, Dixon and Morris, Jr.). It would therefore appear that the agreement *303 in question, in spirit and effect, stands upon the same principles as those which govern in the construction of composition agreements, and that the cases which hold that every agreement or arrangement, when a composition is made with creditors, by which an advantage is secured to any one of the creditors which is withheld from the others, is a fraud upon the creditors from whom it is concealed, although it has never had, nor can have the effect of depriving them of any portion of the amount which they had agreed to receive, must control this case (See Break agt. Cole, 4 Sandf. Supr. Ct., 79: Pinner agt. Higgins, 12 Abb. Pr. 334: Lawrence agt. Clark, 36 N. Y., 128).
It is contended by the counsel for the plaintiff that this case is not analogous to the cases referred to, because the agreement which is the subject of this action is entirely collateral, and was made with an outside party who was only indirectly interested in having the agreement carried out. I cannot adopt that view of the case. Blair and Strnthers, in the transaction referred to, represented the company, and they recited in their prospectus that the whole capital stock had been issued to them and to Foster in payment for the Blair process and the works at G-lenwood. They made the agreement to place 9,000 shares of the stock in the hands of Mr. Diven, the trustee, and the trustees of the company, with their consent, had ordered the sale of the 6,000 shares in question. It seems to me that Blair and Struthers then should be regarded in the eye of the law as principals in the transaction, and that each subscriber to a portion of the 6,000 shares had a right to require that each one of his co-subscribers should be a reliable subscriber, that is, an absolute subscriber, not possessing a collateral guaranty from the very parties who had consented to place the 6,000 shares upon the market, that they would at a future time, in case such subscriber was dissatisfied with his purchase, take the same off his hands. At all events I think that each subscriber was entitled to know that such a guaranty had been given, and that the concealment of such fact from *304 any or all of the subscribers brings the case within the principles laid down by the authorities to which I have referred.
It was said, too, upon the argument, that there was no analogy between the cases of composition deeds and subscription papers, such as that which was signed in this case. The case of the White Mountain Company agt. Eastman (34 N. H. R., 124) already referred to, and the cases of Melvin agt. Lamar Insurance Company (80 Ill. R., 446); Graff agt. Pittsburgh Railroad Company (7 Casey, 489); Miller agt. Hanover Junction Railroad Company (6 Norris, 95), I think most clearly show that such analogy does exist.
In Miller agt. Hanover Junction, &c., Railroad Company (6 Norris, 95), the court held that a subscription to joint-stock is not only an undertaking with the company, but with all other subscribers, and that a subscriber cannot be permitted to set up a secret parol arrangement with the agents of the company, by which he may be released from his subscription while his fellow subscribers continue to be bound. In that case the court quoted with approbation from the opinion of Woodward, J., in the case of Graff agt. The Pittsburgh Railroad Company (7 Casey, 489, 498), in which the learned justice says that “ subscription to a joint-stock is not only an undertaking to the company, but with all other subscribers; and even if fraudulent as between the parties, is to be enforced for the benefit of the others in interest.”
And in Robinson agt. The Pittsburg and Connelville Railroad Company (8 Casey, 334) the supreme court of Pennsylvania also held that it is no defense to an action to recover the amount of a subscription to the capital stock of a railroad company; that it was made at the request of the members of the company, with the understanding that the defendant was not to pay for or hold the stock subscribed, and that the same was to be canceled; also, that such an agreement would be a fraud on the company and on all subsequent subscribers, and whilst the defendant might reap no advantage from it, he would be held to all the responsibility of a bona fide subscriber. On *305 the authority of these cases I think that it must be held that the agreement referred to in the complaint was fraudulent and void, and that, while the plaintiff may be liable upon his subscription, he cannot enforce the agreement between him and the defendants (See, also, to the same effect, Chandler agt. Brown, 74 Ill., 333 ; The Connecticut River, &c., R. R. Co. agt. Baily, 24 Vt., 495, and Anderson agt. Newcastle R. R. Co., 12 Ind., 376). If I am right in the opinion that the facts disclosed upon the trial render the agreement of April 4, 1873, incapable of enforcement, it is unnecessary to discuss the other questions which have been so elaborately presented by the respective counsel in their briefs.
The complaint should be dismissed, with costs.